UNITED STATES, Appellee,

v.

Carmen M. MAIO, Jr., Airman First Class U.S. Air Force, Appellant.

No. 66,667.
ACM 28458.

U.S. Court of Military Appeals.

Argued Jan. 7, 1992.
Decided May 11, 1992.

For Appellant: Captain *Ursula P. Moul* (argued); Colonel *Jeffrey R. Owens* (on brief); Major *Bernard E. Doyle, Jr.*

For Appellee: Captain *James C. Sinwell* (argued); Lieutenant Colonel *Brenda J. Hollis* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant was tried by a general court-martial composed of a military judge sitting alone at Travis Air Force Base, California, on January 18 and 19, 1990. Pursuant to his pleas of guilty, he was found guilty of attempting to wrongfully use methamphetamine (by consuming placebos) on divers occasions between July 5 and 27, 1989, and attempting to wrongfully possess the same (by acquiring a placebo) on July 14, 1989. Art. 80, Uniform Code of Military Justice, 10 USC § 880. In addition, pursuant to his conditional pleas, he was found guilty of wrongfully using methamphetamine on divers occasions between April 1 and July 27, 1989, in violation of Article 112a, UCMJ, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $400 pay per month for 9 months, and reduction to airman basic. The convening authority approved this sentence, and the Court of Military Review affirmed on January 10, 1991, in an unpublished opinion.

■ This Court granted review of the following question of law:

WHETHER THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS HIS CONFESSION FOR LACK OF ADEQUATE CORROBORATION AS REQUIRED BY MIL.R.EVID. 304(g).

We hold that this record contains more than the slight evidence of corroboration required by Mil.R.Evid. 304(g), Manual for Courts–Martial, United States, 1984, for admission of appellant's voluntary confession at this court-martial. *See generally United States v. Yeoman*, 25 MJ 1, 4 (CMA 1987).

Appellant was charged with various drug offenses occurring between January 1 and July 27, 1989. The original specifications state:

CHARGE I: VIOLATION OF THE UCMJ, ARTICLE 80.

Specification 1: In that [appellant] did, at or near Travis Air Force Base, California, *on divers occasions between on or about 5 July 1989 and on or about 27 July 1989*, attempt to wrongfully use methamphetamine.

Specification 2: In that [appellant] did, at or near Travis Air Force Base, California, *on or about 14 July 1989*, attempt to wrongfully possess some amount of methamphetamine.

CHARGE II: Violation of the UCMJ, Article 112a.

Specification: In that [appellant] did, at or near Travis Air Force Base, California, *on divers occasions, between on or about 1 January 1989 and on or about 27 July 1989*, wrongfully use methamphetamine.

(Emphasis added.)

Appellant, however, admitted during his guilty-plea inquiry that he used actual methamphetamine in his room on only two occasions during the period from April 1 to July 27, 1989. He acknowledged that those uses (the specification of Charge II) were distinct from his use and possession of placebo methamphetamine on July 5 and 27, 1989 (specifications 1 and 2 of Charge I).

Prior to entering his pleas, appellant had moved to suppress his confession of July 27, 1989, on the basis of a lack of corroboration required by Mil.R.Evid. 304(g). This confession states:

I Carmen M. Maio, have been stationed at Travis since April 1988. Duane Spencer (Spence) has been my roommate since August '88. The first time I had used methamphetamine, crank, was approx. January 1989. *Since Jan 1989 I have used crank approximately 10–12 times. The places at which this occurred were either in my room, bldg. 1346 Rm. A–4, or before going to Folsom Lake to jet ski. I would use crank in my room before going jet skiing, or on my free time always keeping it to myself and not involving others.* The crank was in powder form, and I wo[u]ld inhale it for digestion. I knew it was crank from its distinct smell and it would make me feel like I had drank a pot of coffee. *On the occasions I had used crank I had gotten it through Spence or was turned on by him, occasionally using with him (10–12 times). Most of the time I would give Spence money and Spence would get it from someone else, neither one of us actually being dealers. I think Spence would get the crank at Gigi's from civilians.* I don't think Spence ever bought crank from military members, and I don't know of any military members who sell drugs. Around the middle of July '89 I bought $20.00 worth of what I thought was crank from Ron, a guy I met at Gigi's. I used about half of what I bought and realizing that it was in fact not crank, I did not use what was left. Around the beginning of July 89, I used about half a line of what I thought was crank, being turned on from Ron. This happened in Ron's car somewhere in Fairfield. I never used crank on duty or before going to work. It was for my personal use and I had never dealt to anyone nor witnessed Spence to deal. The reasons I would use crank is because it made me feel productive, gave an ener-

gy boost. I do not want what has happened to be detrimental to my career. Realizing this I will never use it again. I do like the military and wish to be a part of the military team. I will try to help in any way possible.

s/Carmen M. Maio

(Emphasis added.)

Evidence was taken at a hearing prior to pleas on admissibility of this confession, including testimony by Special Agent Salyards, the police officer who obtained it on July 27, 1989. Sergeant Brainard, an undercover agent for the security police, also testified *inter alia* concerning additional admissions made to him by appellant on July 5, 1989, as well as other matters observed during his undercover operation against appellant and his roommate during the charged period. (*See* appendix.) Finally, Sergeant Keith, appellant's supervisor, testified about appellant's work schedule and duties during this period.

The military judge ruled that the challenged confession was sufficiently corroborated to be admitted at this court-martial. He also articulated for the record his reasons for this ruling. The Court of Military Review also held that the confession was properly corroborated and articulated its corroboration rationale. We now affirm the court below.

---

Our starting point in resolving the granted issue is the voluntary confession written and signed by appellant and given to Agent Salyards on July 27, 1989. In this confession, appellant essentially admitted that he had intentionally and knowingly used methamphetamines (crank) approximately 10 to 12 times since January 1, 1989. He further stated that he normally inhaled these drugs in powder form in private but also occasionally in the presence of his roommate, Duane Spencer. He particularly noted that such use had occurred before going jet skiing. Finally, he identified Spencer as his drug supplier whose source he further denoted as a bar named Gigi's.

Clearly, this confession established all the elements of unlawful drug use in violation of Article 112a. *See* para. 37(b)(2), Part IV, Manual, *supra*. Moreover, appellant at no time claimed his confession was involuntary or that he was not properly advised of his rights prior to making it. *See United States v. Yeoman, supra* at 4. *See* Mil.R.Evid. 304(a) and (c)(3). Instead, he rested his suppression motion on Mil.R.Evid. 304(g) and contended his confession was not adequately corroborated.

Mil.R.Evid. 304(g) states:

(g) *Corroboration. An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth.* Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence. If the independent evidence raises an inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused only with respect to those essential facts stated in the confession or admission that are corroborated by the independent evidence. Corroboration is not required for a statement made by the accused before the court by which the accused is being tried, for statements made prior to or contemporaneously with the act, or for statements offered under a rule of evidence other than that pertaining to the admissibility of admissions or confessions.

(1) *Quantum of evidence needed.* The independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. *The independent evidence need raise only an inference of the truth of the essential facts admitted.* The amount and type of evidence introduced as corroboration is a factor to be considered by the trier of

fact in determining the weight, if any, to be given to the admission or confession.

(2) *Procedure.* The military judge alone shall determine when adequate evidence of corroboration has been received. Corroborating evidence usually is to be introduced before the admission or confession is introduced but the military judge may admit evidence subject to later corroboration.

(Emphasis added.)

 This Court has considered the above Manual provision on several occasions. We have consistently held that it does not require independent evidence of the *"corpus delicti"* of the confessed offense (*see* 7 J. Wigmore, *Evidence* § 2072 (Chadbourn rev.1978) for a discussion of that term) but, instead, that it requires independent evidence which establishes the trustworthiness of the confession. *United States v. Rounds,* 30 MJ 76, 80–81(CMA), *cert. denied,* —— U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990); *United States v. Melvin,* 26 MJ 145 (CMA 1988); *United States v. Yeoman, supra.* These holdings are consistent with Supreme Court precedent and with practice in Federal civilian courts such that it can be realistically said in the Federal sector that the "corpus delicti" corroboration rule no longer exists. *United States v. Kerley,* 838 F.2d 932, 939– 40 (7th Cir.1988). *See generally* C. Wright, *Federal Practice and Procedure: Criminal 2d* § 414 at 516 (1982); 7 J. Wigmore, *Evidence* § 2071 at 511–16. The bottom line is that the corroborating evidence must raise only an inference of truth [1] as to "the essential facts admitted" in the confession. *See State v. Harris,* 215 Conn. 189, 575 A.2d 223, 226–27 (1990).

We note that the following evidence independent of appellant's confession was adduced at the suppression hearing:

(1) Direct testimony from undercover agent Sergeant Brainard that appellant had earlier admitted all confessed facts to him on July 5, 1989.

(2) Direct testimony from undercover agent Sergeant Brainard that he observed Spencer, appellant's roommate and putative supplier, produce and use methamphetamine on June 2, 1989, at or near "Gigi's."

(3) Written statement by Sergeant Brainard that Spencer admitted using methamphetamine, in the presence of his roommate, when jet skiing.

(4) Direct testimony from undercover agent, Sergeant Brainard, that during the charged period he twice observed appellant readily ingest placebo methamphetamine by snorting it from a key.

[This portion of our opinion is not a quotation.]

In several ways the above evidence raised an inference of truth as to the actual drug use admitted by appellant in his July 27th confession. First, proof of appellant's deliberate consumption of substances which he thought were methamphetamine on two occasions within the time period covered in his confession established his ability and inclination to use the drug methamphetamine as he confessed. *See United States v. Melvin, supra* 26 MJ at 147. Second, evidence of his earlier admissions to the undercover agent confirmed the times and venue of his confessed methamphetamine use at least to an extent feasible for essentially private drug use.[2] *See*

---

**1.** We have characterized the quantum of corroboration evidence required by Mil.R.Evid. 304(g), Manual for Courts–Martial, United States, 1984, as "slight" (*United States v. Yeoman,* 25 MJ 1, 4 (CMA 1987)), or "very slight" (*United States v. Melvin,* 26 MJ 145, 146 (CMA 1988)). This characterization reflects our understanding that it need not establish beyond a reasonable doubt or by a preponderance of the evidence the truth of the essential facts stated in the confession. *See* S. Saltzburg, L. Schinasi and D. Schlueter *Military Rules of Evidence Manual,* Editorial Comment on Rule 304(g) at 166 (3d ed.1991).

**2.** Appellant's admissions to the undercover agent were made subsequent to his use of real methamphetamine but contemporaneous with and prior to his use of the placebo methamphetamines. A strong argument can be made that these spontaneous admissions do not require corroboration under Mil.R.Evid. 304(g). *See United States v. Pennell,* 737 F.2d 521, 537 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). In any event, no objection was made by appellant to use of these admissions at the suppression hearing as cor-

*State v. Harris, supra* 575 A.2d at 226. Third, proof of Sergeant Brainard's observations of Spencer and the latter's demonstrated capacity to produce drugs from Gigi's during the period covered in his confession established appellant's access to the drugs which he confessed to using. *United States v. Rounds,* 30 MJ at 80. Finally, the marked similarity of the essential facts asserted in appellant's spontaneous admission on July 5, 1989, and in his subsequently advised confession on July 27, 1989, imparted a strong ring of truth to his later statement.[3] *See generally United States v. Yeoman, supra* at 4–5. Accordingly, based on both appellant's earlier admissions to Sergeant Brainard and the other evidence noted above, we conclude that his later voluntary confession was shown to be sufficiently trustworthy for admission at his court-martial. *See generally United States v. Basile,* 771 F.2d 307, 311 n. 3 (7th Cir.1985).

The decision of the United States Air Force Court of Military Review is affirmed.

Judges CRAWFORD and GIERKE concur.

## APPENDIX

Q: When you produced this placebo methamphetamine, how did you identify it to the accused?

A: I called it crank. That is what the common term is.

Q: For what?

A: Methamphetamine.

Q: So he snorted some up his nose that day on the 5th?

A: Yes ma'am.

Q: What did you do after snorting this placebo methamphetamine?

A: We continued to drive around a little bit. We had some further conversation. Then we went back to the club.

Q: I'd like to focus your attention a little bit on the conversation you had with the accused on the 5th of July. Did the accused on the 5th of July, *during this time in the car when this placebo methamphetamine was snorted, did he mention any prior uses of methamphetamine on his part?*

A: *Yes ma'am.*

Q: *How did that come up?*

A: *We were talking about jet skiing. He stated the last week, he and his roommate had snorted some methamphetamine and it kept them up through the night and into the next day. They had HFCs or HSCs that they had to conduct and they did them quickly and in a timely manner and they were given time off for it.*

Q: All right. What was an HFC or an HSC? What are you talking about?

A: I wasn't sure because I don't have a maintenance background.

Q: Did you ask the accused?

A: I talked to him about it. I asked him what it was. Basically my recollection was that it had some sort of check or inspection they conducted on an aircraft.

Q: How was his methamphetamine use supposed to be related to this aircraft check?

A: Methamphetamine is a speed. Basically what it does is hype your system

---

roboration of his later confession. *See* Mil. R.Evid. 304(d)(2)(A).

**3.** We again note that, at the suppression hearing, appellant did not object to introduction in evidence of his earlier admissions to Sergeant Brainard. *See* Mil.R.Evid. 304(c)(2) and (d)(2)(A). In view of the recent decision of *Arizona v. Fulminante,* —— U.S. ——, ——–——, 111 S.Ct. 1246, 1257–66, 113 L.Ed.2d 302 (1991), if such evidence was admitted at trial, any error in admission of his later confession could be considered harmless. *See* RCM 910(a)(2), Manual, *supra.* *Cf. United States v. Wong Ching Hing,* 867 F.2d 754, 758 (2d Cir.1989).

In Federal civilian practice it is inappropriate for a conditional guilty plea to be entered and accepted when the issue reserved for appeal will not be dispositive of an accused's case. *See United States v. Wong Ching Hing, supra. See generally* 18 USC (Rule 11(a)(2)) Federal Rule of Criminal Procedure, Notes of Advisory Committee on 1983 Amendment.

up so it makes you feel like you are always ready to go. By ingesting methamphetamine it makes you feel like you can accomplish anything and everything in a relatively quick time.

Q: What did the accused tell you it did for him with regard to this aircraft check?

A: It made him feel like he was up and constantly going so that they could conduct their work in a faster manner; it made them work faster basically.

Q: So he told you he was under the influence of methamphetamine when he was working on these aircraft?

A: That is true.

Q: The result of that aircraft work was what?

A: They conducted the inspection in a timely manner and they were given time off.

Q: After the 5th of July—Before I go further, let me—*Did you discuss with the accused who he used methamphetamine with, I guess people do this together, on the 5th of July?*

A: *I did.*

Q: *How did that come about?*

A: *In the conversation Airman Maio told me that he basically used with his roommate, Airman Spencer, and that they liked to use it prior to going jet skiing on the weekends.* He didn't really particularly like partying with military people or they didn't party with military people because, allegedly, a female had been apprehended by OSI and the female came back and told them that OSI knew about them, or had their names or something, so that they were real cautious with other military people.

\* \* \* \* \* \*

A: On the 23rd of June.

\* \* \* \* \* \*

Q: How did he use? With a key? The same way?

A: Right. Snorting through the nose.

Q: On a key?

A: Yes ma'am.

Q: So the accused told you that he primarily used the methamphetamine with Airman Spencer. Right?

A: That is correct.

Q: Did you ever see those two use together?

A: No ma'am.

Q: On the 5th of July when he was telling you he used methamphetamine primarily with Airman Spencer and about this using methamphetamine and working on these aircraft, let me ask you this. The date that the accused supposedly got cranked up on methamphetamine and worked on this aircraft, did he tell you when that was that he got this day—he did this and got the day off?

A: No. When he told me on the 5th of July, and his words were, "the week before" so it could have been anywhere from the last few days of June until the first few days of July.

Q: And he told you he was rewarded by getting time off?

A: Comp time.

Q: Did he say how much time?

A: I believe it was just that day.

Q: After the 5th of July 1989, did you ever see the accused involved with drugs?

A: One more time.

Q: When was this?

A: I'd have to check my statement to be sure of the date. But it was towards the mid month of July, probably around the 14th I would guess.

Q: Is the 14th of July your best recollection?

A: Off of memory.

(Emphasis added.)

COX, Judge (concurring):

I agree that the military judge did not err in denying appellant's motion to suppress his confession. I write separately, however, to caution that, with respect to Charge II and its specification, this opinion should not, in my view, be extended beyond its facts.

There have long been special rules in American jurisprudence regarding corroboration of statements of the accused. *See* Comment Note, *Corroboration of extrajudicial confession or admission*, 45 ALR 2d 1316 (1956). The two leading cases are *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), and *Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954).

In *Opper*, the Court explained that "the better rule ... [is] that the corroborative evidence need not be sufficient, independent of the statement, to establish the *corpus delicti.*" 348 U.S. at 93, 75 S.Ct. at 164. In *Smith*, the Court ruled that a conviction may be supported by a confession "as long as there is substantial *independent evidence* that the offense has been committed." 348 U.S. at 156, 75 S.Ct. at 199 (emphasis added).

As basis for these rules, the Supreme Court explained in *Opper:*

> In the United States *our concept of justice* that finds no man guilty until proven has led our state and federal courts generally to refuse conviction on testimony concerning confessions of the accused not made by him at the trial of his case.

348 U.S. at 89, 75 S.Ct. at 162 (emphasis added).

Over the years since *Smith* and *Opper*, courts have tended to minimize, in their verbal formulations, the degree of corroboration necessary to receive statements of an accused and to sustain convictions based thereon. Still I know of no conviction that has been sustained in which, apart from the words of the accused, there was no evidence whatever that a crime occurred.[1] Looking beyond mere verbiage, the cases convince me that, in America, we do not allow someone to be convicted unless there is some level of *external* evidence *that a crime has occurred,* no matter how many times or ways the accused has admitted it

outside a courtroom. Whether this policy is based on due process or some other constitutional value is not specified.

In contrast, the Military Rules of Evidence are established by the President according to his authority to prescribe rules of evidence for courts-martial. Art. 36(a), Uniform Code of Military Justice, 10 USC § 836(a). As reflected in the majority opinion, Mil.R.Evid. 304(g), Manual for Courts–Martial, United States, 1984, sets forth a rule for corroboration of certain admissions and confessions. Presumably this rule, having no direct counterpart in the Federal Rules of Evidence, was intended as a sort of restatement of the general federal case law regarding corroboration of confessions and admissions.

I do not doubt that appellant's statements, both during his attempted possession and use of methamphetamine (Charge I and its specifications) and upon being interrogated later by military authorities, meet the requirements for admissibility under the Military Rules of Evidence. By its terms, however, the Mil.R.Evid. 304(g) corroboration requirement appears to be limited to those sorts of statements which require rights-warnings and waivers. *See generally* Mil.R.Evid. 304 and 305. Statements of an accused falling under any other evidentiary rule, including apparently Mil.R.Evid. 801(d)(2)(*"Admission by party-opponent"*) as well as Mil.R.Evid. 803 and 804 (*"Hearsay exceptions"*), are not assigned a corroboration requirement.

The result is that appellant's *res gestae* statements made during the attempted possession and use of methamphetamine, not apparently being the result of interrogation, would presumably be admissible simply as Mil.R.Evid. 801(d)(2) admissions by a party-opponent.[2] Further, since those admissions have no corroboration requirement themselves, they become available under Mil.R.Evid. 304(g) to serve as corroboration of appellant's later, interrogation-

---

1. Of course, I am not including cases of perjury or the false cry of "Fire!" in a crowded theater, where the words themselves are legally significant.

2. Depending on context, such an admission might also qualify as a statement against interest. Mil.R.Evid. 804(b)(3), Manual for Courts–Martial, United States, 1984.

derived confession. Thus, under the rules of evidence, both of appellant's statements appear to be admissible.

In my view, however, had this case gone to trial on the merits with the state of evidence before us, appellant's conviction of Charge II and its specification would not have been sustainable as a matter of law.[3] I reach this conclusion because, as the record now stands, there is not a scintilla of evidence that the crime in question occurred—apart from appellant's own words. Obviously, there is a distinct difference between legal sufficiency of evidence and admissibility. Therefore, my caveat is that the Military Rules of Evidence do not comprehensively circumscribe the entire body of law on the subject of corroboration of admissions and confessions. The instant facts are illustrative.

The crime in issue is *appellant's* alleged wrongful *ingestion* of *methamphetamine* on divers occasions between April 1 and July 27, 1989. *See* Art. 112a(a) and (b)(1), UCMJ, 10 USC § 912a(a) and (b)(1). Not counting appellant's statements, let us examine the cited evidence that appellant ingested such a substance.

The testimony is that, on a different, charged occasion, appellant purchased what he mistakenly thought was *methamphetamines*. On other, charged occasions, he ingested what he again mistakenly thought was *methamphetamine*. That these actions occurred may indeed show a general inclination on appellant's part and may lend credence to his statement of broader drug use. Thus they may have relevance in a general sense. However, the fact that appellant committed crime B does not indicate that crime A *occurred* at another time and place and that appellant committed it. Not in America.

Similarly, there is evidence that appellant's *roommate* had access to purported methamphetamine and that the *roommate* ingested methamphetamine—once even in appellant's presence.[4] The inference is that appellant therefore had access to methamphetamine. Granted, access and opportunity can often be relevant, such as to identify a perpetrator of a known crime. However, a person's apparent capability to commit a crime does not indicate that a crime was in fact *committed*. Not in America.

In fact, apart from appellant's own words, there is no evidence whatever pointing to *appellant's ingestion* of *methamphetamine*.[5]

**3.** I fully recognize that this case did not go to trial on the merits, and I do not speculate as to what other information might have been adduced by way of corroboration.

**4.** Admittedly, the proximity-to-drug-use aspect of *United States v. Rounds*, 30 MJ 76 (CMA), *cert. denied*, — U.S. —, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990), in which I concurred, is quite similar to the instant facts. In that case, however, the testimony of others regarding the circumstances of the various drug events and Rounds' intimate connection therewith lent considerably more substance to his purpose and conduct.

**5.** Due to appellant's judicial admissions, it is also unnecessary for us to predict whether evidence would have been introduced to corroborate the illicit nature of the substance appellant supposedly ingested. That the substance was a controlled substance is, of course, the very essence of this offense. To convict him solely on the basis of out-of-court admissions, without any external indication of the nature of the substance, would again be tantamount to convicting him on his words alone. *See Opper v.*

*United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), and *Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954). Appellant's pleas relieve us from speculating how the Government might have sustained its ultimate burden of proving the illegality of the substance beyond a reasonable doubt.

In this regard, I note this paradox: Even where questionable substances or body fluids have been seized, evaluated at laboratories, and the results published, it is still necessary to have an expert present in the courtroom to elucidate for the factfinder the wonders and mysteries of drug identification. *United States v. Reichenbach*, 29 MJ 128 (CMA 1989); *United States v. Murphy*, 23 MJ 310 (CMA 1987). On the other hand, apparently any third-grade dropout who has purchased an unknown substance from an unknown source can instinctively and unerringly identify it, beyond a reasonable doubt, with at least the same degree of certitude as a rocket scientist. *See United States v. Schrock*, 855 F.2d 327 (6th Cir.1988); *United States v. Rounds, supra*. Appellant is such an example, having demonstrated his prowess by buying and using *placebo*!

Again, my concern is not with the Military Rules of Evidence, as far as they go. Admissibility is one thing; legal sufficiency is another. Had the case been tried on the merits and had no external evidence been presented corroborating the occurrence of a crime, the military judge should have granted a motion for a finding of not guilty at the close of the prosecution's case. RCM 917.

Of course the case never got that far; appellant only stood his ground on the question of admissibility. As I agree that appellant's confession was admissible under the rules of evidence, the military judge obviously did not err in refusing to suppress it. With this qualification, I concur.

WISS, Judge (concurring):

As the concurring opinion of Judge Cox points out, the matter of corroborating evidence, independent of a confession or admission, actually involves two issues: The quantity and quality of the independent evidence sufficient to corroborate the confession for purposes of *admissibility* of that confession; and the quantity and quality of such evidence that will be sufficient, along with the confession, to *sustain a conviction* in a contested trial. *See Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

Judge Cox's views on the second question are stimulating and provoking, but that question is not in issue in this case. Accordingly, since that issue is complex and worthy of careful and focused study, I prefer to leave consideration of it for a case in which the matter is in issue.

The first issue, of course, is properly before the Court in this case, and I concur in the majority's treatment of that issue under these facts. At the same time, I think it is appropriate here to record my view that our fundamental task in this area is to examine the *probative quality* of the proffered independent evidence to see if it truly *is* "corroborative."

Mil.R.Evid. 304(g), Manual for Courts-Martial, United States, 1984, states that the independent evidence necessary to permit admissibility of a confession must "corroborate[ ] the essential facts admitted to justify sufficiently an inference of their truth." *The Random House College Dictionary* at 302 (Rev.Ed.1980), defines "corroborate" as "to confirm; make more certain." The majority opinions in both *United States v. Rounds*, 30 MJ 76(CMA), *cert. denied*, —— U.S. ——, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990), and *United States v. Melvin*, 26 MJ 145 (CMA 1988), illustrate situations in which—though the independent evidence was not sufficient, alone, to prove the charged misconduct beyond a reasonable doubt—the independent evidence *did* "confirm" and "make more certain" the truth of the confession's reliability.

The separate opinion of then-Chief Judge Everett in *Rounds* contains a good discussion (30 MJ at 83–84) of what I perceive to be this search for trustworthiness of a confession by *probative* independent evidence—evidence which, because of *what* it corroborates, will lead one to conclude logically that the whole confession is true. While the *quantity* of the independent evidence need only be "slight" (*id.* at 83) to permit admission of the confession, the *quality* of that evidence is the more critical focus as to the confession's reliability and, thus, admissibility.