UNITED STATES

v.

Staff Sergeant John T. BALDWIN,
United States Air Force.

Misc. Dkt. No. 2000–02.

U.S. Air Force Court of Criminal Appeals.

15 June 2000.

---

6. The record indicates the trial counsel attempted to do just that.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Major Bryan T. Wheeler.

Appellate Counsel for the Appellee: Colonel Jeanne M. Rueth, Lieutenant Colonel James R. Wise, and Major Thomas R. Uiselt.

Before SNYDER, Chief Judge, SCHLEGEL, and BURD, Appellate Military Judges.

## OPINION OF THE COURT

SNYDER, Chief Judge:

On 9 February 2000, a General Court–Martial convened at Charleston Air Force Base, South Carolina. Appellee was arraigned on one specification of committing indecent acts, on divers occasions, on his stepdaughter, who is less than 16 years of age. Article 134, UCMJ, 10 U.S.C. § 934. Prior to entering pleas, trial defense counsel made a timely motion to suppress appellee's con-

fession on the ground that it was insufficiently corroborated. After receiving evidence on the motion and hearing argument, the military judge granted the motion.

On 9 February 2000, the United States gave timely written notice of its intent to appeal the military judge's ruling pursuant to Article 62(a)(2), UCMJ, 10 U.S.C. § 862(a)(2). All other jurisdictional and regulatory requirements having been met by appellant United States, the case is properly before us for disposition. *See* Rule for Courts–Martial 908(b); Air Force Instruction 51–201, *Administration of Military Justice,* ¶ 8.7 (Oct. 3, 1997); Courts of Criminal Appeals Rules of Practice and Procedure 21(d), 44 M.J. LXXIII (1996). We hold that the military judge did not err in his ruling.

## Statement of the Issue

The issue in this appeal is quite clear. Simply stated, it is, whether a confession is sufficiently corroborated when practically all of the essential facts admitted are corroborated by independent evidence except one, specifically, that an offense was committed. We hold that it is not.

## Background

The confession in question is the product of an interview of appellee, on 29 April 1999, by special agents of the Air Force Office of Special Investigations (AFOSI). There is no issue regarding the technical advisory requirements of Article 31, UCMJ, 10 U.S.C. § 831, and Mil.R.Evid. 305, the voluntariness of the confession, or the truth of the confession. In fact, appellee had negotiated a plea agreement with the convening authority. Appellee's handwritten statement reads as follows:

In the beginning of March 1999 my wife Paula and I started to experience some problems in the [sic] our personnal [sic] life. Because of this, I started to feel withdrawn from our sex life. After a month of this behavior, I went to check on my daughter [M] (this was a common practice, since she has trouble sleeping with blankets on her). As I went to check on her, I noticed her panties had moved to the side revealing her genitals. I did not do anything except move her in bed and cover

her. However, that image had stayed in my mind for quite some time. A week later (2nd weekend in April) I again checked on my daughter and found her in the same circumstance. It was then that I touched her sexually for the first time. I *never* penetrater [sic] her in any way. The first time I touched her was only for a few seconds and I quickly left because of guilt and remorse. But it didn't stop me. I continued to touch her in her sleep on her vagina for the next 2 weeks for a total of 5 times. Only on the weekends. The last couple of times I would kneel on the floor—masturbate while I touched her. Never did I remove her clothes or touch my penis to her body. It was on the 24th [of April] that my wife Paula, had walked in on me. It was at that time when I finally realized what I had done. Immediately I went and sought help for my behavior. I first went to Chaplin [sic] Morey in LG and he referred me to James Cox—a Family Therapist. With Mr Cox [sic] help I am in therapy to fix my problem. I also have left my house voluntarily to separate myself from my daughter. This is a one time occurance [sic] and had happened to no other child. My wife had taken every precaution to protect her child and to help me to bring our life together again.

To corroborate this statement, the prosecution presented the testimony of appellee's mother, his wife, and, via a stipulation of expected testimony, his therapist. His mother testified in general terms that he admitted to her that he committed the offenses and that he planned to see a chaplain. The substance of his wife's testimony is summarized by the military judge in his findings, as follows:

On 24 April 1999, the accused was seen by his wife in their female child's room pulling the covers up on her. This was not an unusual event. The door was open, and the accused had not attempted to conceal himself. The child was clothed wearing a pajama top and a pajama bottom. The accused was fully clothed. When Mrs. Baldwin walked into the child's bedroom, the accused turned around and gave Mrs. Baldwin a strange look that she had never seen before. There was nothing about that look, or the actions by the accused, that caused Mrs. Baldwin to believe that the accused had done anything wrong.

The accused left the bedroom and went to the living room. There, Mrs. Baldwin noticed the accused crying on the floor. While in that emotional state, the accused told Mrs. Baldwin that he had been molested as a child, and that he was sorry.

Two days later, the accused sought professional counseling with the Base Chaplain, who referred him to a therapist. On 29 April 1999, the accused gave a written statement to AFOSI (Attachment C to Defense Motion), which is the subject of this Motion to Suppress.

At no time did the alleged child victim ever complain of any abuse, molestation or unwelcome touching. At no time was the accused ever seen improperly touching the child. At no time did the prosecution present any physical evidence of molestation. At no time did the prosecution present any circumstantial evidence that a touching had even occurred. At no time did the prosecution present any evidence of unusual behavior on the part of the alleged child victim. At no time did the prosecution present any expert testimony that would suggest that any facts of this case is [sic] consistent with child abuse or molestation.

* * *

In this case, this Court finds that the accused pulling the cover up on his child, and giving a strange look at his wife and crying about his own history of molestation, does not suggest or corroborate sexual abuse either. This Court finds that the quantum of corroborative evidence in *United States v. Faciane*, is far greater than the corroborative evidence in this case. In other word, the government has failed to introduce sufficient evidence that corroborates the essential facts admitted to justify sufficiently an inference of their truth.

### Discussion

We review the military judge's ruling on this issue for an abuse of discretion.

The military judge's factual findings are reviewed under a clearly erroneous standard, and his legal conclusion that appellee's confession is insufficiently corroborated is a legal conclusion which we review *de novo*. *United States v. Ayala*, 43 M.J. 296, 298 (1995). *Accord United States v. Young*, 49 M.J. 265, 266–67 (1998). In reviewing an interlocutory appeal by the government, we are not at liberty to find additional facts or substitute our interpretation of the facts for the military judge's findings of fact. Article 62, UCMJ, 10 U.S.C. § 862. One manner by which a military judge may commit an abuse of discretion is to apply an erroneous legal standard.

Appellate government counsel stands firmly on their assessment that appellee's confession is true and that, as such, the evidence is more than sufficient to corroborate it, for the only reason the corroboration rule exists is to prevent an accused from being convicted on the basis of a confession which is not truthful. *See United States v. Hall*, 50 M.J. 247, 251 (1999). In fact, appellate government counsel respectfully take the military judge and trial defense counsel to task for their "quest to ignore the truth," since trial defense counsel never suggested any evidence which questioned the truthfulness of appellee's confession, and the military judge specifically stated during argument that, "truthfulness has nothing to do with admissibility."

The admissibility of confessions and admissions is governed by Mil.R.Evid. 304(g), which requires the introduction of independent evidence, direct or circumstantial, that corroborates the essential facts admitted to justify sufficiently an inference of their truth. *Id.* Other confessions or admissions which themselves require corroboration do not qualify as independent evidence under this rule. *Id.* Judicial interpretation of this rule is now firm that the President intended to adopt the federal rule of corroboration. *United States v. Maio*, 34 M.J. 215 (C.M.A. 1992); *United States v. Melvin*, 26 M.J. 145, 147 (C.M.A.1988) (Everett, C.J., concurring in part and dissenting in part). Both appellant and appellee agree with this fact. Needless to say, they part ways in their application of the rule.

Commentators have observed that this rule is easier to state than to apply, and that the military courts have struggled with how much is enough. *See* Stephen A. Saltzburg, et al., *Military Rules of Evidence Manual* 188–89 (4th ed.1997). Our review of the seminal cases convinces us that one reason for this struggle is that our superior court historically has articulated the rule in one manner but applied it in another. Specifically, our superior court frequently articulates the rule in a very broad manner or only in a partial manner, but in fact applies it just as the President mandates: only those essential facts corroborated by independent evidence will be admitted into evidence.

■ An example of the former is *dictum* in *Maio* that the corroboration rule no longer exists in federal practice and that the court consistently has held that independent evidence of the *corpus delicti* is not required. *Maio*, 34 M.J. at 218; *but see id.* at 220 (Cox, J., concurring). And, of course, what has become a mantra, is that the quantum of evidence required to corroborate a confession is slight. *Id.* at 218 n. 1; *see Melvin*, 26 M.J. at 146. The fact of the matter, however, is that a close review of the cases demonstrates that our superior court finds confessions sufficiently corroborated only where there is some qualitative independent evidence that the offense admitted to has been committed *and* otherwise supports an inference of the truthfulness of the confession. The court has referred to this as a less demanding "trustworthiness-corroboration test." *See United States v. Rounds*, 30 M.J. 76, 81 (C.M.A. 1990) (citing *Melvin*; distinguishing *United States v. Mims*, 24 C.M.R. 126, 1957 WL 4722 (C.M.A.1957)).

■ What our field practitioners must appreciate is that, while the whole or entire *corpus delicti* need not be established by independent corroborative evidence, the independent corroborative evidence still must establish that an offense was committed, although not by any particular quantum of proof such as by a preponderance, or clear and convincing. Although the corroborative evidence need not identify the accused as the perpetrator, it must, at a minimum, demonstrate that the charged offense was commit-

ted and at least point to the other elements of the charged offense by bolstering the confession. It is by this method that Rule 304(g) is satisfied, that is, the corroborative evidence must support an inference of truthfulness of the facts admitted. This is by no means a new interpretation of the rule.

*Smith v. United States*, 348 U.S. 147, 156, 75 S.Ct. 194, 99 L.Ed. 192 (1954), is one of the two primary cases on the corroboration rule. One must bear in mind, however, that the sole issue for determination in *Smith* was whether the corroboration rule would be applied to crimes without a tangible corpus, those which necessarily require identifying the accused in order to show a crime was committed. *Id.* at 154, 75 S.Ct. 194. While answering that question in the affirmative and determining if the government satisfied the rule, the Court stated that, "[i]t is agreed that the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long *as there is substantial independent evidence that the offense has been committed,* and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty." *Id.* at 156, 75 S.Ct. 194 (citations omitted) (emphasis added).

In the sister case of *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954), the Court stated that independent corroborative "evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense." *Id.* at 93, 75 S.Ct. 158 (citing *Smith*). Too often, however, our superior court articulates the legal conclusion of Rule 304(g), that corroborating evidence must support an inference of the truthfulness of the facts admitted, without also articulating the rule's requirement that corroborating evidence must prove that the offense was committed. *See, e.g., United States v. Cottrill,* 45 M.J. 485, 489 (1997). Nonetheless, our superior court consistently has been faithful to the essential requirements of Rule 304(g) in deed if not in word.

There is no better example of this than the court's decision in *Rounds.* A review of the corroborative evidence in *Rounds* certainly supports an overall abiding comfort level that Rounds used marijuana in San Antonio, Texas, and Houston, Texas, during Thanksgiving and on New Year's Eve, as well as cocaine during New Year's Eve in Houston, as he admitted doing in his confession. The court, however, found adequate corroboration only for the marijuana use in San Antonio and the cocaine use during the New Year's Eve party. The government had no independent evidence which pointed specifically to Rounds' use of cocaine in Houston during Thanksgiving or his use of marijuana at the New Year's Eve party, despite the fact that illicit drugs were observed at those events. *Rounds,* 30 M.J. at 77; *see also id.* at 83 (Everett, C.J., concurring in part and dissenting in part) (asserting New Year's Eve cocaine use also insufficiently corroborated).

This same pattern also is discernable in cases in which our superior court held a confession or admission sufficiently corroborated. In *United States v. Hyder,* 47 M.J. 46 (1997), the majority had some misgivings regarding the accomplice-husband's confession which implicated Hyder. However, it was deemed sufficient for purposes of corroboration because it interlocked with Hyder's confession. *See id.* at 50 (Effron, J., concurring in part and in the result); *but see id.* at 51–52 (Sullivan, J., dissenting) (would only affirm use of LSD because he viewed husband's confession as inadmissible under hearsay exceptions, but husband testified at trial to fact LSD was in refrigerator, which corroborated Hyder's admission to the LSD offense). The corroborating evidence in *Hyder* was slight but it did demonstrate that the charged offenses were committed. In *U.S. v. Cottrill,* 45 M.J. 485, the court stated broadly that proof of the *corpus delicti* was not necessary, but in fact there was an abundance of direct and circumstantial evidence that the child victim had been molested, including a statement by the victim to her physician that her "privates" hurt because her daddy touched them. *Id.* at 489. This essential principle emerges even more forcefully in *United States v. Faciane,* 40 M.J. 399 (C.M.A.1994), a case with somewhat similar facts where the court found the corroborating evidence lacking.

Appellee avers that *Faciane* is dispositive, and appellant advocates it is distinguishable. Appellee argues that there was more evidence in *Faciane* than the instant case, but it still was insufficient, while appellant argues that *Faciane* stands only for the fact there was insufficient evidence of indecent acts with a minor (a distinction which is lost on us). The dispositive fact of *Faciane* from our perspective is that, while the government had independent evidence of Faciane's access to the victim and the opportunity to molest her, there simply was no independent evidence, of any quantity or quality, that the victim was in fact molested. Thus, the court's brief dispositive summation: "a troubled child ... does not suggest or corroborate sexual abuse." *Id.* at 403. Such is the situation in the instant case.

Appellee's confession is rich in detail, and his wife's testimony corroborates a substantial portion of those details. But there simply is no independent evidence of any quantum or quality that M was in fact molested. That fact comes solely from appellee's confession. This falls short of the requirement of Rule 304(g) regardless of how truthful his confession may be. For purposes of corroboration, we cannot infer that she was molested in the absence of some independent evidence, *e.g.*, expert medical testimony, which supports such an inference, such as was the case in *Cottrill*. 45 M.J. at 489–90.*

Our dissenting colleague essentially applies the bottom line of Rule 304(g) while glancing over its operative components. Specifically, it is by independent evidence, however slight, that an offense has been committed and which confirms the confession or admission that the inference of truthfulness may be drawn. *See Maio*, 34 M.J. at 223 (Wiss, J., concurring). Further, he omits the language of the rule which clearly states that only those essential facts corroborated by independent evidence may be admitted against an accused. Interestingly, we draw on the same precedents for our opposite conclusions

regarding how our superior court has applied the rule.

In closing, we echo the comments of the military judge: our ruling is based solely on the current evidence of record. We note that Mrs. Baldwin's statement to investigators contains considerably more detail than her testimony at trial. For reasons not entirely apparent from the record, however, the statement was not tendered to her in an effort to refresh her recollection. Nonetheless, it is not at all clear whether the admissions attributable to appellee therein will qualify under any of the exceptions to the Hearsay Rule, *see* Mil.R.Evid. 804(b)(3); *United States v. Swenson*, 51 M.J. 522 (A.F.Ct.Crim.App.1999), and thus not require corroboration. In any event, we express no opinion on whether those statements, even if ultimately ruled admissible, will suffice, as that is an open question. *See, e.g., Maio*, 34 M.J. at 220, 222–23 (Cox, J., concurring); *id.* at 223 (Wiss, J., concurring).

Accordingly, the government's appeal is hereby

DENIED.

**BURD, Judge (concurring):**

As stated in the lead opinion, we review the military judge's ruling on this issue for an abuse of discretion; the judge's factual findings must be accepted unless clearly erroneous; and, the judge's legal conclusion is reviewed *de novo*. *United States v. Ayala*, 43 M.J. 296, 298 (1995); *accord United States v. Young*, 49 M.J. 265, 266–67 (1998).

Contrary to the view of my dissenting brother, I do not view the military judge's decision to be a misapplication of the law. Additionally, it would seem that implicit support exists in the dissenting opinion for the view that our legal system has evolved beyond the need to require corroboration of confessions. *See generally* J. Strong, *McCormick on Evidence* § 145 (5th ed.1999). I do not share such a view.

---

* Lest this opinion be misapplied by field practitioners, we are in no way deviating from our superior court's rule that confessions in drug offense cases may be corroborated by evidence of proximity as well as direct evidence of illicit drug activity. *See United States v. Hall*, 50 M.J. 247, 251–52 (1999); *United States v. Maio*, 34 M.J. 215, 218 (1992); *United States v. Rounds*, 30 M.J. 76 (C.M.A.1990); *Maio*, 34 M.J. at 222 n. 4 (Cox, J., concurring).

One of the important safeguards of our legal system is the responsibility trial judges have to exercise discretion. We should ensure our decisions do not erode the authority of trial judges to carry out this responsibility. Given the facts of this case, I am unwilling to conclude the military judge abused his discretion.

SCHLEGEL, Senior Judge (dissenting):

I would reverse the military judge's decision to suppress the appellee's confession because he considered the lack of *corpus delicti* a significant factor in arriving at his conclusions of law.

As a society, our suspicion about convicting an accused based upon an uncorroborated confession is rooted in our past. *Smith v. United States*, 348 U.S. 147, 152–53, 75 S.Ct. 194, 99 L.Ed. 192 (1954). In the military, the requirement for corroboration has been codified in Mil.R.Evid. 304(g). This rule provides, in part,

An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth. Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence. .... Corroboration is not required for a statement made by the accused before the court by which the accused is being tried, for statements made prior to or contemporaneously with the act, or for statements offered under a rule of evidence other than that pertaining to the admissibility of admissions or confessions.

Subsection (1) describes the quantum of proof necessary for admission,

The independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. The independent evidence need raise only an inference of the truth of the essential facts admitted.

Although there can be no debate about the requirement to corroborate a confession with independent evidence before its admission, the issue in each case naturally becomes a question of sufficiency or quantum of the corroboration. Historically, this inquiry has involved two competing theories: independent proof of the *corpus delicti* or independent evidence establishing the truthfulness of the statement.

In *Opper v. United States*, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101 (1954), the Supreme Court resolved the question for the federal courts.

[W]e think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the trustworthiness of the statement.

Our superior court has consistently rejected efforts to interpret Mil.R.Evid. 304(g) as requiring independent proof of the *corpus delicti*. *United States v. Cottrill*, 45 M.J. 485, 489 (1997) (citing *United States v. Maio*, 34 M.J. 215, 218 (C.M.A.1992); *United States v. Rounds*, 30 M.J. 76, 80 (C.M.A.1990)). However, the military judge specifically referenced consideration of the *corpus delicti* rule as a factor in his decision. The majority endorses that approach.

"[W]hile the whole or entire *corpus delicti* need not be established by independent corroborative evidence, the independent corroborative evidence still must establish that an offense was committed, although not by any particular quantum of proof such as a preponderance, or clear and convincing."

This ignores a plain reading of the rule and case law which mandate that the corroboration need raise only an inference of the truth of the essential facts admitted in the confession.

The military judge also cited *United States v. Faciane*, 40 M.J. 399 (C.M.A.1994), as his compass in this matter. However, both the facts and the law of that case are too dissimilar from the case *sub judice* to provide any

meaningful guidance. In *Faciane*, our superior court ruled the military judge erred by admitting the statements of the child-victim to a child protective committee member under Mil.R.Evid. 803(4). These statements were also used by the military judge to corroborate the accused's confession. Without these statements, the court determined the child's aberrant behavior and the appellant's access to her were insufficient to corroborate his confession. The court was unwilling "to attach a criminal connotation to the mere fact of a parental visit" nor draw any inference of corroboration from her behavior because she was the child "of recently divorced parents and a recently remarried mother." *Faciane*, 40 M.J. at 403. In this case, no evidence was presented about the child-victim's behavior after the assaults nor was the appellee's presence in the room that night used as the only other corroborating evidence.

Instead of examining what the evidence did not show (independent evidence of the *corpus delicti*), the military judge should have focused on whether the evidence allowed an inference as to the truth of the essential facts admitted in the appellee's confession. Although not permitted by the rule to use other uncorroborated confessions or admissions, we may look to the appellee's conduct to corroborate the confession. *Smith*, 348 U.S. at 200, 75 S.Ct. 194. This conduct, after being discovered by his wife, epitomizes the concept of consciousness of guilt.

The appellee's confession, written in his own hand, describes in detail his abuse of his stepdaughter. This confession was given five days after he was discovered by his wife in the child-victim's room. The appellee stated he and his wife began to have difficulties in their marriage, including problems with their sex life, in March 1999. In early April 1999, when he went to check his stepdaughter because she had a problem sleeping with blankets on her, he noticed her genitals. Unable to dismiss this image from his mind, the appellee wrote, a week later he touched her sexually for the first time. He emphasized that he never penetrated her in any

way. He recounted that over the next few weeks, even though he felt guilt and remorse, he touched her vagina on five occasions during weekends and that she never woke-up. Although he admitted to masturbating on a few occasions while touching her, he denied removing her clothes or placing his penis on her body. On 24 April 1999, after touching her again, the appellee wrote, his wife walked into the room and he realized what he had done and went out to get help for his behavior. He said he went to Chaplain Morey who referred him to a Mr. Cox. The appellee also wrote that his wife had taken every precaution to protect the child-victim and that he left the house voluntarily.

The testimony from the appellee's wife corroborated they were having problems in their marriage prior to April 1999, and these problems included their sex life. She also corroborated that because the victim tossed in bed and kicked off her covers, she frequently had to cover her up throughout the night. She recalled on a weekend near the end of April 1999, she found the appellee in the child-victim's room. When she began to enter the room, he turned, gave her a look she had never seen before, and left the bedroom. This look corroborates the sudden realization he wrote about in his confession. His feelings of guilt and remorse explain why he fled the bedroom and she found him on the floor in the living room crying.[1] Her decision to have the child-victim sleep with her and the appellee's departure from the marital home corroborates his statement that his wife took the necessary steps to protect the child-victim from him. Finally, her testimony about the accused's conduct in going to the Chaplain and then seeing a man named Mr. Cox also corroborates the confession.

The testimony of the appellee's mother corroborates the confession because he called her near the end of April 1999, and admitted he molested the victim.[2] While talking with her, he explained his plan to see a chaplain, turn himself in, find a counselor, and move out of the house. His conduct in actually

---

1. The accused's wife never testified he said he was sorry.

2. *See Maio*, 34 M.J. at 221. (Cox, J. concurring).

doing all these things gives rise to the inference that the confession is trustworthy.

The appellee also agreed to the admission of a stipulation of expected testimony from Doctor James Cox. The stipulation provided that the appellee became his patient on 28 April 1999, as the result of a referral from an Air Force chaplain. It also stated he was treating the appellee for problems with his stepdaughter. This information also corroborates the confession.

In the military judge's brief findings of fact he makes no reference to the testimony of the appellee's mother or the stipulation of expected testimony. Instead, he devotes a paragraph to evidence that was not presented. In doing so he reveals his belief that evidence of the *corpus delicti* was a requirement for corroboration and not just a factor. Unfortunately, he ignores how this "missing evidence" also corroborates the essential facts of the confession. Of course there was no complaint from the child-victim because, as the appellee duly noted in his confession, she never woke-up. This also explains the absence of any unusual behavior on her part and the lack of expert testimony that the child-victim's actions were consistent with some type of post-traumatic stress syndrome. The appellee was not seen by anyone because, as noted in his confession, no one walked in on him until the last time. Finally, unless the appellee was lying when he wrote his confession, there would be no physical evidence of molestation because he said he never penetrated her.

The military judge used the wrong analysis in evaluating the corroborating evidence and in doing so revealed the very reason the *corpus delicti* test has been rejected by the Supreme Court, our superior court, and is not specified in Mil.R.Evid. 304(g). The appellee's conduct, the testimony of his wife and mother, and the stipulation of expected testimony provide ample independent corroboration of his confession.