# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, J.A. FISCHER, A.Y. MARKS**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**RICHARD A. LATOUR**
**AVIATION MACHINIST'S MATE AIRMAN (E-3),**
**U.S. NAVY**

**NMCCA 201600114**
Review Pursuant to Article 62(b), Uniform Code of Military Justice,
10 U.S.C. § 862(b)

**Military Judge:** CAPT Robert J. Crow, JAGC, USN.
**Convening Authority:** Commander, Navy Region Southeast, Jacksonville, FL.
**For Appellant:** LT Robert J. Miller, JAGC, USN; LT James M. Belforti, JAGC, USN.
**For Appellee:** LT Ryan Aikin, JAGC, USN.

**12 July 2016**

------------------------------------------------------
**PUBLISHED OPINION OF THE COURT**
------------------------------------------------------

MARKS, Judge:

This case is before us as an interlocutory appeal by the Government, filed pursuant to Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862, and RULE FOR COURTS-MARTIAL 908, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). The Government challenges a trial ruling "which excludes evidence that is substantial proof of a fact material in the proceeding." Art. 62(a)(1)(B), UCMJ.

The appellant alleges the military judge (MJ) abused his discretion by excluding from evidence relevant portions of the appellee's admissions pursuant to MILITARY RULE OF

EVIDENCE 304(c), SUPPLEMENT TO THE MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.)[1] when:

    (1) The appellee did not move to suppress the statements or object prior to entering his pleas;

    (2) The appellee's spontaneous text message admission to an alleged victim was made in an informal exchange and not pursuant to a law enforcement interrogation; and

    (3) An alleged victim testified she awoke the morning after the incident naked from the waist down with the appellee leaving her room.[2]

## BACKGROUND

A general court-martial comprised of members with enlisted representation was convened and assembled to try the appellee for four specifications of sexual assault in violation of Article 120, UCMJ. There are two alleged victims among the four specifications, and the suppressed evidence relates to two specifications involving one alleged victim, BNS. Specifically, the appellee is charged with penetrating BNS's vulva with his penis and finger while she was incapable of consenting because of impairment by a drug, intoxicant, or other similar substance.

The appellee pled not guilty to the charge and specifications during a 15 December 2015 Article 39(a), UCMJ, session. At the time the appellee entered pleas, he had not objected to the admission of any confessions or admissions for lack of corroboration under MIL. R. EVID. 304(c).

On 3 March 2016, the Government filed a motion to pre-admit a transcript and video recording of the appellee's first interrogation with Naval Criminal Investigative Service (NCIS). During the interrogation, the appellee admitted to digitally penetrating BNS and having sexual intercourse with her, but described the acts as consensual. BNS has no memory of any sexual activity with the appellee. The MJ noted the appellee's objection to pre-admission of the video and transcript for lack of corroboration during a 7 March 2016 Article 39(a) session. Although he initially reserved his ruling until after both alleged victims testified, the MJ denied the motion to pre-admit just before opening statements.

During direct examination, trial defense counsel objected to BNS's expected testimony about a text message from the appellee. An exchange of text messages between BNS and the appellee hours after the alleged sexual assault included the appellee's admission that, "[w]e made

---

[1] As amended by Exec. Order No. 13643, 78 Fed. Reg. 29559, 29563-65 (15 May 2013). Mil. R. Evid. 304(c) was subsequently amended by Executive Order 13730, 81 Fed. Reg. 33331, 33350 (20 May 2016). However, the 20 May 2016 amendments to MIL. R. EVID. 304(c) became effective after the appellee's arraignment and thus do not apply to this case. 81 Fed. Reg. 33331 ("Nothing in these amendments shall be construed to invalidate any . . . trial in which arraignment occurred, or other action begun prior to the effective date of this order, and any such . . . trial, or other action may proceed in the same manner and with the same effect as if these amendments had not been prescribed.")

[2] Government Brief of 19 Apr 2016 at 1.

whoopy lol."[3]  At the resulting Article 39(a) session, trial defense counsel argued the text message was an admission lacking corroboration or, alternatively, hearsay.  The MJ sustained the objection for insufficient corroboration.  After BNS finished testifying, the MJ also suppressed the appellee's recorded and transcribed interrogation for lack of corroboration.  The MJ later memorialized his rulings in written Findings of Fact and Conclusions of Law, Appellate Exhibit XLIV.  These rulings led to the Government's interlocutory appeal *sub judice*.

## DISCUSSION

We review an MJ's decision to exclude evidence for an abuse of discretion.  *United States v. McCollum*, 58 M.J. 323, 335 (C.A.A.F. 2003).  We review findings of fact under the clearly-erroneous standard and conclusions of law *de novo*.  *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995).

> A military judge abuses his discretion when his findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law.

*United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted).

The ruling that prompted this interlocutory appeal is based on MIL. R. EVID. 304(c)(1), which provides:

> An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been admitted into evidence that corroborates the essential facts admitted to justify sufficiently an inference of their truth.

A confession is defined as "an acknowledgment of guilt," and "'admission' means a self-incriminating statement falling short of an acknowledgment of guilt, even if it was intended by its maker to be exculpatory."  MIL. R. EVID. 304(a)(1)(B)-(C).

## I.    *Timing of the Objections*

The Government first argues that the appellee waived his MIL. R. EVID. 304(c) objections to both admissions because he failed to object before entering pleas.

MIL. R. EVID. 304(f)(1) states:

> Motions to suppress or objections under this rule, or Mil. R. Evid. 302 or 305, to any statement or derivative evidence that has been disclosed must be made by the defense prior to submission of a plea.  In the absence of such motion or objection,

---

[3] Prosecution Exhibit 5 for identification at 5.

the defense may not raise the issue at a later time except as permitted by the military judge for good cause shown. Failure to so move or object constitutes a waiver of the objection.

By its plain language, MIL. R. EVID. 304 requires an accused to challenge a confession or admission for lack of corroboration before entering pleas. Nothing in MIL. R. EVID. 304 suggests that "[m]otions to suppress or objections under this rule" do not include motions and objections under MIL. R. EVID. 304(c). But the rule also confers discretion on an MJ to consider such a motion or objection after entry of pleas if he or she finds "good cause shown." MIL. R. EVID. 304(f)(1).

The Government urges us to overturn the MJ's suppression of the appellee's admissions because the appellee's objections were untimely and sustained without good cause. Although we agree that MIL. R. EVID. 304(f)(1) applies to objections based on lack of corroboration, we cannot say that the MJ abused his discretion in considering the objections anyway. "[A]bsent clear evidence to the contrary," we presume the MJ knew and followed the law. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007). The MJ was silent on the applicability of MIL. R. EVID. 304(f)(1) to objections based on lack of corroboration. And while in his Findings of Fact and Conclusions of Law he did describe the appellee's objection to the text message as "timely,"[4] we do not find that characterization sufficient to undermine the MJ's discretion in this regard or convince us that an erroneous view of the law influenced his decision.

Importantly, the Government bears some responsibility for the absence of any discussion of timeliness in the record. Trial counsel did not raise the issue when opposing suppression of the appellee's admission. The Government did not invoke MIL. R. EVID. 304(f)(1) until its interlocutory appeal. As the Government argues, this court has the discretion to consider forfeited arguments if "the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citation and internal quotation marks omitted). Whether the MJ found good cause to permit the appellee to raise corroboration after the entry of pleas is a question of law and fact, not a pure question of law. Additionally, the appellee is disadvantaged by the record's silence as to law and fact. Had the Government demanded the MJ articulate the good cause found for considering the appellee's tardy objections, there would be a clearer, more detailed record to review. Nevertheless, nothing in the record before us rebuts our presumption that the MJ correctly applied MIL. R. EVID. 304(f)(1). Under these circumstances, we find that the Government has failed to demonstrate the MJ abused his discretion in considering the objections.

## II.    *Informal Exchanges vs. Law Enforcement Interrogations as Admissions Requiring Corroboration*

The Government next alleges the MJ erred by requiring corroboration of the appellee's text message to BNS under MIL. R. EVID. 304(c)(1) instead of admitting it as an opposing party's

---

[4] Appellate Exhibit XLIV at 2.

statement under MIL. R. EVID. 801(d)(2)(A).  Specifically, the Government argues that an accused's statement outside an interrogation context is admissible as a statement by a party-opponent pursuant to MIL. R. EVID. 801(d)(2)(A).  Thus it is specifically excepted from the corroboration requirement in MIL. R. EVID. 304(c)(1).

MIL. R. EVID. 304(c) has three specific exceptions to its rule requiring corroboration of a confession or admission:

> Corroboration is not required [1] for a statement made by the accused before the court by which the accused is being tried, [2] for statements made prior to or contemporaneously with the act, or [3] for statements *offered* under a rule of evidence other than that pertaining to the admissibility of admissions or confessions.

MIL. R. EVID. 304(c)(3) (emphasis added).

The Government invokes the third exception to the corroboration requirement in this case.  Specifically, it argues the text message was admissible under MIL. R. EVID. 801(d)(2)(A), a rule of evidence defining exclusions from the definition of hearsay:

> (d) *Statements that Are Not Hearsay*.  A statement that meets the following conditions is not hearsay:
> . . .
>> (2) *An Opposing Party's Statement*.  The statement is offered against an opposing party and:
>>> (A) was made by the party in an individual or representative capacity . . . .

MIL. R. EVID. 801(d)(2)(A).

Here, the MJ found:

> The [G]overnment did not offer the text message, or the interrogation of the accused, under any other rule of evidence other than that pertaining to the admissibility of admissions.  Specifically, the [G]overnment did not offer the admissions as any exception to the rule of hearsay such as present sense impression, excited utterance, then existing mental, emotional, or physical condition, a business record, etc.[5]

Our review of the record reveals no clear error in this finding of fact.  The MJ concluded that MIL. R. EVID. 304(c)(1) applied to both the text message and the interrogation.  Although expressed somewhat unclearly, the MJ acknowledged that MIL. R. EVID. 801(d)(2)(A) also applied to both admissions, but he disputed that admissibility under the hearsay rule negated the corroboration requirement.  Again, we review the MJ's conclusions of law *de novo*.

---

[5] AE XLIV at 6.

We could rely on the MJ's finding that the text message was explicitly offered as an admission under MIL. R. EVID. 304(c)(1). The exception at MIL. R. EVID. 304(c)(3) hinges on the rule actually used to *offer* a statement into evidence, not all rules under which it might be admissible. However, such a finding potentially assigns too much importance to the numbered rules of evidence cited or omitted by counsel. It also fails to address the Government's assertion that the MJ erred by requiring corroboration of a statement made outside interrogation instead of admitting it under an exclusion to the hearsay rule.

Consequently, we begin by examining the relationship between MIL. R. EVID. 304 and MIL. R. EVID. 801(d)(2)(A). MIL. R. EVID. 304 defines confessions and admissions and requires independent evidence in corroboration for their admission. Every confession or admission by an accused, including those made to law enforcement, is excluded from the rule against hearsay per MIL. R. EVID. 801(d)(2)(A). While not every statement of a party may meet the definition of a confession or admission, every confession or admission offered into evidence against an accused is a statement "offered against an opposing party and . . . was made by the party in an individual or representative capacity[.]" MIL. R. EVID. 801(d)(2)(A). The history of MIL. R. EVID. 304 and MIL. R. EVID. 801(d)(2)(A) reveals they were created to regulate the same evidence—confessions and admissions.[6] MIL. R. EVID. 801(d)(2)(A) exempts confessions and admissions from the rule against hearsay, and MIL. R. EVID. 304 aims to alleviate concerns about improper self-incrimination. Together, these two rules help ensure the reliability necessary for admission of confessions and admissions into evidence at courts-martial. As the MJ implied in his written conclusions of law, these rules are complementary, not mutually exclusive.

The Government cites three cases in support of its assertion that an accused's statement outside interrogation is admissible under MIL. R. EVID. 801(d)(2)(A) and therefore not a confession or admission entitled to corroboration: *United States v. Maio*, 34 M.J. 215 (C.M.A. 1992); *United States v. Baldwin*, 54 M.J. 551 (A.F.Ct.Crim.App. 2000), *aff'd*, 54 M.J. 464 (C.A.A.F. 2001); *United States v. Byrd*, No. 200601320, 2006 CCA LEXIS 293, unpublished op. (N.M.Ct.Crim.App. 29 Nov 2006). All three opinions imply the existence of two tiers of confessions and admissions—those elicited during a law enforcement interrogation and those not. As here, the trial counsel in those cases relied on non-interrogation admissions to corroborate confessions or admissions derived from interrogation. According to MIL. R. EVID. 304(c)(2), "[o]ther uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence." But unlike the case *sub judice*, the appellants in the three cited cases did not object to admission of the non-interrogation statements for lack of corroboration. Despite the Government's contention, we find those cases provide neither binding precedent nor persuasive authority for the proposition that there exist two tiers of confessions and admissions.

---

[6] "Rules 304(c)(1) and (2) express without change the definitions found in Para. 140 *a*(1), MCM, 1969 (Rev.)." Supplement to MCM, UNITED STATES (2012 ed.), Analysis of MIL. R. EVID. 304(c)(1), App. 22 at A22-12. "Rule 801(d)(2)(A) makes admissible against a party a statement made in either the party's individual or representative capacity. This was treated as an admission or confession under Para. 140 *a* of the 1969 Manual, and is an exception of the prior hearsay rule." *Id.*, Analysis of MIL. R. EVID. 801(d)(2), App. 22 at A22-61. As implied, ¶ 104*a* of the 1969 MCM begins with the same definitions of confession and admission appearing in the version of MIL. R. EVID. 304 in effect here.

In *Maio*, the appellant unwittingly made incriminating statements about drug use to an undercover law enforcement officer before ultimately confessing to a special agent during an interrogation. 34 M.J. at 217. When Maio moved to suppress his written confession for lack of corroboration, the trial court heard and considered his earlier statements to the undercover officer as independent evidence in corroboration. *Id.* Affirming the trial court's admission of the written confession, the Court of Military Appeals (CMA) ratified admission and consideration of "additional admissions" outside interrogation as independent evidence in corroboration. *Id.* at 218. Having affirmed admission of "additional admissions" without requiring corroboration, the CMA majority noted the applicable exception in a footnote:

> Appellant's admissions to the undercover agent were made subsequent to his use of real methamphetamine but *contemporaneous with and prior to* his use of the placebo methamphetamines. A strong argument can be made that these spontaneous admissions do not require corroboration under Mil.R.Evid. 304(g). . . . In any event, *no objection was made by appellant to use of these admissions at the suppression hearing as corroboration of his later confession*.

*Id.* at 218 n.2 (citations omitted) (emphasis added). The CMA majority began by considering the second, not the third, exception to the corroboration requirement for confessions and admissions. *Id.* Ultimately, though, the court concluded that Maio forfeited the corroboration requirement for the admissions outside interrogation because he failed to object when the Government introduced them into evidence. *Id.* at 218 n.3.

In a concurring opinion, Judge Cox focused instead on the third exception to the corroboration requirement, MIL. R. EVID. 801(d)(2)(A), and the absence or existence of rights-warnings and waivers:

> By its terms, however, the Mil.R.Evid. 304(g) corroboration requirement appears to be limited to those sorts of statements which require rights-warnings and waivers. *See generally* Mil.R.Evid. 304 and 305. Statements of an accused falling under any other evidentiary rule, including apparently Mil.R.Evid. 801(d)(2)("*Admission by party-opponent*") as well as Mil.R.Evid. 803 and 804 ("*Hearsay exceptions*"), are not assigned a corroboration requirement.

*Id.* at 221 (Cox, J., concurring). It is not clear from Judge Cox's concurrence what terms of the MIL. R. EVID. 304 corroboration requirement limit confessions and admissions to those requiring Article 31(b) rights warnings and waivers. Judge Cox cites no authority for carving out statements "not apparently being the result of interrogation" and limiting their path into evidence to MIL.R.EVID. 801(d)(2). *Id.*

As in *Maio*, the Air Force Court of Criminal Appeals' (AFCCA) holding in *Baldwin* is independent of its discussion of whether the corroboration requirement applies to confessions and admissions made outside interrogation. *Baldwin*, 54 M.J. at 555-56. Trial counsel used Baldwin's incriminating statements to his mother to corroborate his written confession to the Air Force Office of Special Investigations (AFOSI). *Id.* at 553. Baldwin objected to lack of corroboration of the AFOSI confession, but he forfeited any objection to his statements to his

mother for lack of corroboration. *Id*. at 555. Without citing Judge Cox's *Maio* concurrence, the AFCCA then commented on the admissibility of the appellant's admissions to his mother under MIL. R. EVID. 801(d)(2)(A) as an exception to the corroboration requirement. *Id*. The court referred to Baldwin's comments to his mother as "admissions to third persons not involved in the investigation of these offenses" but did not explain why different rules of evidence governed admissions to AFOSI and admissions to those not involved in investigations. *Id*. at 556.

In an unpublished opinion in *Byrd*, this court reversed an MJ's redaction of the appellant's confession to NCIS for insufficient corroboration. 2006 CCA LEXIS 293, at *20. Among the facts corroborating Byrd's confession was his statement to a shipmate that "he had 'hit that,'" referring to sexual intercourse with the victim. *Id*. at *16. In a footnote, this court wrote that the statement was admissible under MIL. R. EVID. 801(d)(2)(A) and thus exempt from the corroboration requirement. *Id.* at *16, n.8. As authority, this court cited only *Baldwin*. *Id*.

It is worth noting a later case in which the AFCCA reviewed an MJ's reliance on *Baldwin* to admit an accused's uncorroborated admission of pre-service drug use to a classmate as corroboration for a confession to law enforcement. *United States v. Stevens*, No. ACM S30170, 2004 CCA LEXIS 168, unpublished op. (A.F.Ct.Crim.App. 20 Jul 2004). Instead of affirming the MJ's admission of the uncorroborated admission, the court demurred. *Id*. at *9 ("We need not decide whether the military judge correctly ruled that the appellant's uncorroborated admissions to Airman [R] could be used to corroborate her admission of pre-service drug use to the JDET agent.").

The argument and case law presented in support of limiting the corroboration requirement to confessions and admissions elicited in law enforcement interrogations are neither binding nor persuasive. We find no legal basis for ignoring the plain language of MIL. R. EVID. 304 in favor of a discriminatory application of its corroboration requirement. *See United States v. Custis*, 65 M.J. 366, 370 (C.A.A.F. 2007) ("It is a well established [sic] rule that principles of statutory construction are used in construing the *Manual for Courts-Martial* in general and the Military Rules of Evidence in particular. . . . [W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal citations and quotation marks omitted). Thus we find no error in this MJ's decision to apply MIL. R. EVID. 304(c)(1) to the appellee's texted admission to BNS and require corroboration.

### III.     *Sufficiency of Corroborating Evidence in Alleged Victim's Testimony*

Finally, the Government avers that the MJ erroneously presented the minority position in *United States v. Adams*, 74 M.J. 137 (C.A.A.F. 2015), as the law governing corroboration and then applied this misinterpretation of the law to require "one-for-one" corroboration of every fact going to a crime's elements.[7] Once again, we review an MJ's decision to suppress evidence for an abuse of discretion—an erroneous statement of the law, clearly erroneous findings of fact, or a conclusion outside the range of reasonable discretion. *Miller*, 66 M.J. at 307.

---

[7] Government Brief at 21.

For clarity, we revisit the text of the corroboration requirement at MIL. R. EVID. 304(c):

(1) An admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been admitted into evidence that corroborates the *essential facts* admitted to justify sufficiently an inference of their truth.

(2) Other uncorroborated confessions or admissions of the accused that would themselves require corroboration may not be used to supply this independent evidence. If the independent evidence raises an inference of the truth of some but not all of the essential facts admitted, then the confession or admission may be considered as evidence against the accused *only with respect to those essential facts* stated in the confession or admission that are corroborated by the independent evidence.

(3) . . .

(4) *Quantum of Evidence Needed.* The independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission or confession. The independent evidence need raise only an inference of the truth *of the essential facts admitted*. The amount and type of evidence introduced as corroboration is a factor to be considered by the trier of fact in determining the weight, if any, to be given to the admission or confession.

(5) *Procedure*. The military judge alone is to determine when adequate evidence of corroboration has been received. . . .

(Emphasis added).

It is well-established that, "[t]he corroboration requirement for admission of a confession at court-martial does not necessitate independent evidence of all the elements of an offense or even the *corpus delicti* of the confessed offense. . . . Rather, the corroborating evidence must raise only an inference of truth as to the essential facts admitted." *United States v. Cottrill*, 45 M.J. 485, 489 (C.A.A.F. 1997) (citations omitted). As opposed to the elements or *corpus delicti* of an offense, essential facts refer to those found "in the confession" or admission to be admitted. *Maio*, 34 M.J. at 218. Essential facts may vary by case but have included "the time, place, persons involved, access, opportunity, method, and motive of the crime." *Adams*, 74 M.J. at 140 (citations omitted).

To be admissible, an essential fact in a confession or admission must be corroborated by independent evidence of that essential fact. *Id.* The quantum of independent evidence adequate to corroborate an essential fact need only be "slight." *United States v. Yeoman*, 25 M.J. 1, 4 (C.M.A. 1987). But the evidence must be relevant to the essential fact. Independent evidence of one essential fact does not extend to other essential facts; each essential fact requires its own

9

independent evidence in corroboration. *Adams*, 74 M.J. at 140, n.7 ("The dissent would change the standard in M.R.E. 304(c) to a 'trustworthiness' standard, where, if one part of the confession is found to be 'trustworthy,' that 'trustworthiness' can be extrapolated to those portions of the confession which are not supported by the independent evidence, thereby allowing the entire confession to be admitted into evidence. However, M.R.E. 304(c) expressly rejects the concept of extrapolating 'trustworthiness' by requiring independent evidence of each essential fact to be corroborated."). The MJ must "examin[e] the potential corroboration for each essential fact the [G]overnment wishes to admit." *Id*. at 140-41. Corroborating evidence of even "four of five essential facts" will not suffice for admission of the entire confession. *Id*. at 140. Only corroborated facts are admissible; uncorroborated facts must be excised. *Id*. The *Adams* majority held that an MJ who admits uncorroborated essential facts from a confession abuses his or her discretion. *Id*. at 141.

The Government points to the MJ's citations to the dissent in *Adams* and argues he erroneously applied Chief Judge Baker's hyperbolic mischaracterizations of the majority holding as the law. However, the MJ quoted Chief Judge Baker's dissent as "instructional" only after explicitly grounding his ruling in the majority opinion in *Adams*.[8] He prefaced his ruling with "[t]he Court's binding interpretation in *Adams* that '[i]f sufficient corroborating evidence of an essential fact is not provided, then the uncorroborated fact is not admissible and the military judge must excise it from the confession'. . . ."[9] Acknowledging that the majority might disagree with the characterization, the MJ quoted Chief Judge Baker's observation that "'the majority thus requires that every essential fact identified in a confession must be individually corroborated on a one-for-one basis[.]'"[10] The MJ substantiated the "one-for-one corroboration requirement" by accurately paraphrasing the *Adams* majority: "C.A.A.F. uses the example that if four of five essential facts are corroborated then only those four corroborated facts are admissible against the accused and the military judge is required to excise the uncorroborated essential fact."[11] We find the MJ correctly presented the majority opinion in *Adams*, which is the binding precedent.

We next review the MJ's findings of fact for clear error. Following the list of "previously considered" essential facts in *Adams*, the MJ detailed the following:

1. The time in this case can be narrowed to the early morning hours of 4 October 2014.
2. The place can be identified as the barracks room of BNS.
3. The persons involved can be identified as the accused and BNS.

---

[8] AE XLIV at 6 ("Although the Court ruled the admissions to be inadmissible in this case because not sufficiently corroborated based upon the law established in the majority opinion in *Adams*, the Court finds the dissent in *Adams* instructional.").

[9] *Id*. at 8.

[10] *Id*. at 6 (quoting *Adams*, 74 M.J. at 141 (Baker, C.J., dissenting)).

[11] *Id*. at 8 (citing *Adams*, 74 M.J. at 140).

4. Access to the accused's room prior to the alleged sexual activity is established through the testimony of AM3 [A] and access after is established by BNS in that she saw the accused walking out her door the following morning.
5. Once AM3 [A] left, the accused had the opportunity to engage in sexual activity with BNS.
6. There is no independent evidence of the method used, or that any method whatsoever was used.
7. There is no independent evidence of any crime occurring, much less any motive to commit it.[12]

The MJ then documented his search for evidence corroborating the method of sexual assault.

> The Court asked if there was, and provided the [G]overnment the opportunity to provide any, evidence of sexual activity or penetration to include vaginal soreness, seminal fluids in her vagina, condom wrapper, used condom, DNA, wet spot on sheets, seeing the accused naked, seeing the accused lying in the bed, testimony to the effect of 'a woman knows her body and knows when she has experienced sexual intercourse and that she experienced sex' or any other independent evidence that corroborates the essential facts admitted.[13]

The MJ:

> queried the [G]overnment to provide any additional evidence beyond the admissions of the accused and noted there was no independent evidence any [sic] sexual activity from either [BNS] or any other witness. The only somewhat corroborating evidence as to anything taking place was the evidence that the accused was in the room of [BNS], that [BNS] woke up naked from the waist down the following morning and that [BNS] saw the accused leaving her room.[14]

Having carefully reviewed the record and pleadings, we find no clear error in the MJ's findings of fact and proceed to his conclusions of law. Pursuant to MIL. R. EVID. 304(c)(5), "the [MJ] alone is to determine when adequate evidence of corroboration has been received." We lastly consider these determinations for any abuse of discretion.

After mining the evidence for corroboration of essential facts in the appellee's admissions, the MJ concluded: "In the instant case, the essential fact of penetration of [BNS's] vagina by the accused's penis is not corroborated. The essential fact of penetration of the [BNS's] vagina by the accused's finger is not corroborated."[15] Citing language from the *Adams* majority, the MJ held,

---

[12] *Id.* at 7-8.

[13] *Id.* at 9; *see also* Record at 544-45.

[14] AE XLIV at 7.

[15] *Id.* at 8.

11

[T]he admission 'we made whoopy' and the admissions of 'fingering her,' 'inserted it,' and 'penetrated her' must be excised from the otherwise admissible admissions of the accused[.] . . . Without such evidence, there is no other admissible evidence that any sexual activity, much less penetration, ever took place.[16]

Finding no corroboration of sexual activity, as well as no corroboration of its method, the MJ invited the Government's allegation that he required proof of the *corpus delicti*, or body of the crime, contrary to the *Cottrill* line of cases. Whether the appellee's admission of consensual sexual activity with BNS constituted the body of the crime of sexual assault or just an element, it was also an essential fact of the admissions. The MJ concluded the text message to BNS was circumstantial evidence of sexual intercourse or sexual activity, but "the phrase 'we made whoopy' could mean any number of acts of sexual conduct (vaginal intercourse, anal intercourse, oral sex (giving or receiving) or digital penetration of the vagina or anus)."[17] After suppressing the text message, the MJ was left with only BNS waking to find herself naked from the waist down and seeing the appellee leave her room. The MJ held that "nudity is not an indication of sexual activity."[18]

Other cases assessing corroborating evidence provide a reference for analyzing the MJ's conclusion that the evidence in this case fell short of corroborating essential facts of the appellee's admission to NCIS. In his written ruling, the MJ distinguished the independent evidence *sub judice* from the evidence in *Cottrill*. The *Cottrill* case also involved an alleged sexual assault and an accused's admission he digitally penetrated his daughter. 45 M.J. at 487. However, the child victim in *Cottrill* told witnesses that "'her privates hurt'" and that her daddy touched her privates. *Id*. at 486, 489. A medical examination revealed an unnatural opening in the young girl's hymen, which the doctor considered consistent with sexual abuse. *Id*. at 489. The court found the victim's statements and the forensic evidence corroborated the appellant's admissions that he digitally penetrated his daughter. *Id*.

In *United States v. Foley*, the victim awoke to find a "completely nude man in her bed who put her hand on his penis. When he became erect, he attempted to enter her vagina." 37 M.J. 822, 834 (A.F.C.M.R. 1993). She later identified the man as the appellant. *Id*. Although she did not remember him performing oral sex on her, "she did recall moistness in her vagina." *Id*. The Air Force Court of Military Review found "ample corroboration—even of the oral sex that the victim did not recall—to warrant denial of the suppression motion." *Id*.

In *United States v. Brown*, the appellant argued that his admission to performing oral sex on the victim was uncorroborated and thus inadmissible because the victim had no memory of the act. No. ACM 38497, 2015 CCA LEXIS 81, at *17, unpublished op. (A.F.Ct.Crim.App. 3 Mar 2015). A witness, checking on the intoxicated victim, found the appellant in a dark room with the victim. *Id*. at *3. Both the appellant's and victim's pants were down, they both had

---

[16] *Id*. (internal citation omitted).

[17] *Id*. at 5.

[18] *Id*. at 9.

12

erections, and the appellant was on top of the victim holding the victim's penis in his hand while the victim lay with "his arms crossed over his body and looked lifeless." *Id*. at *3-4. Forensic testing also revealed the appellant's DNA on the victim's boxer shorts, belt, and jeans. *Id*. at *17. The AFCCA agreed with the military judge that "there was sufficient corroboration of the essential facts of the appellant's admission." *Id*. at *18 ("Under the circumstances of this case, the presence of the appellant's DNA on the victim's boxer shorts and their states of arousal were highly suggestive of sexual activity.").

As noted on the record and in the MJ's written ruling, no witness, including BNS, testified to observations, physical sensations, or injuries that corroborated sexual activity. Investigators found no physical evidence of sexual activity, whether DNA or a condom wrapper. Comparing the evidence presented *sub judice* to evidence in the cases discussed *supra*, we find no abuse of discretion in the MJ's determination of the inadequacy of the evidence in corroboration. The record and the majority opinion in *Adams* provide a solid foundation for the MJ's findings of fact, interpretation of law, conclusions of law, and suppression of essential facts in the appellee's admissions.

## CONCLUSION

The appeal is denied, and the record is returned to the Judge Advocate General for return to the convening authority.

Chief Judge BRUBAKER and Senior Judge FISCHER concur.

For the Court



R.H. TROIDL
Clerk of Court

13