**UNITED STATES**

v.

**John K. YEOMAN, 252 21 4549, Private (E–1), U.S. Marine Corps.**

**NMCM 85 3746.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 11 July 1985.

Decided 30 May 1986.

---

LCDR Frederick N. Ottie, JAGC, USN, Appellate Defense Counsel.

LT Debra F. Gambrill, JAGC, USNR, Appellate Defense Counsel.

LT Linda P. McIntyre, JAGC, USNR, Appellate Government Counsel.

Before COUGHLIN, Senior Judge, and MIELCZARSKI and DECARLO, JJ.

COUGHLIN, Senior Judge:

Contrary to his pleas, appellant was convicted by a special court-martial, judge alone, of unauthorized absence from appointed place of duty and larceny, in violation of Articles 86 and 121, respectively, of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 921. He was sentenced to three months confinement at hard labor, forfeiture of $375.00 pay per month for three months, and a bad conduct discharge. Appellant's single assignment of error made before this Court concerns the admissibility of police reports under Military Rules of Evidence (Mil.R.Evid.) 803(6) and 803(8); more precisely, he contends that the military judge erred by allowing into evidence an incident report prepared by a law enforcement officer, which report corroborated to a degree appellant's confession made to CID. Appellant claims that without the police report, there is insufficient evidence to corroborate his confession as required by Mil.R.Evid. 304(g) and, accordingly, his conviction of larceny should be set aside.

PFC Fuentes reported the larceny of his cassette tapes and carrying case to his platoon leader, GYSGT Forward, who requested the other platoon leaders to ask their men if the missing items had been seen. As a result, it was revealed that appellant was seen earlier in the day handing out some cassette tapes. When questioned, appellant stated that he had found the cassette case in a locker between two barracks. Appellant, accompanied by his platoon leader, then retrieved the case from between the barracks, and a subsequent search of his wall locker turned up a number of cassette tapes. The items were confiscated and given back to PFC Fuentes. The next morning GYSGT Forward notified the base PMO of the incident, and a criminal investigator was assigned. The investigator surveyed the scene of the reported theft, interviewed the victim, and prepared the incident report in question.

Subsequently, appellant was interviewed by another investigator and denied having stolen the case, stating that he had simply found it and had kept the tapes. Several months later, appellant confessed to stealing the carrying case, keeping eight of the twenty four tapes inside, disposing of the rest of the tapes in a nearby dumpster, and placing the case and its remaining contents in a wall locker between two barracks.

Neither PFC Fuentes nor GYSGT Forward were present at trial and appellant did not testify. The trial counsel offered into evidence the incident report as a report of regularly conducted business under Mil. R.Evid. 803(6) to show that a cassette case owned by PFC Fuentes had been taken that day and that the appellant had been identified as a suspect. The defense counsel argued that the report constituted hearsay not within any recognized exception,

and that it was inherently untrustworthy because it was created with a view toward prosecution. The military judge admitted the report for the limited purpose of showing that a larceny from PFC Fuentes was reported and that the appellant was identified as a suspect.

Mil.R.Evid. 803(6) excepts from the operation of the hearsay rules:

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum ... all as shown by the testimony of the custodian or other qualified witness unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness....

This rule does not make any specific provision for police reports or other documents of an adversarial nature. Mil.R.Evid. 803(8)(B), however, specifically prohibits the introduction into evidence of reports of observations made by police officers or other law enforcement officials when, with respect to what is excepted from the operation of the hearsay rule, it lists:

> [r]ecords, reports, statements, data compilations, in any form, of public office or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, matters observed by police officers and other personnel acting in a law enforcement capacity....*

(Emphasis added).

On appeal, appellate defense counsel contends that the report is inadmissible under Mil.R.Evid. 803(8)(B) and hence also inadmissible under Mil.R.Evid. 803(6), citing the drafter's analysis to Rule 803(8) as support for this position.[1] Government counsel argues that the report is admissible as a business record under Mil.R.Evid. 803(6), thus disagreeing with the drafter's analysis that police reports excluded under Rule 803(8)(B) are also inadmissible under Rule 803(6).

■ The issue of whether a document excluded under Mil.R.Evid. 803(8)(B) can be admitted under Rule 803(6) raises an interesting and unsettled question. *Compare* Drafter's Analysis, Mil.R.Evid. 803(8)(B); *United States v. Cain*, 615 F.2d 380 (5th Cir.1980); *United States v. Oates*, 560 F.2d 45 (2d Cir.1977), with Saltzburg, Schinasi, Schleuter, MILITARY RULES OF EVIDENCE MANUAL, Editorial Explanatory Comment, Mil.R.Evid. 803(6), p. 362 (1981). We need not reach the merits of that issue, however, because we find that the police report was admissible under Rule 803(8), notwithstanding subsection (B) thereof, for the limited purpose of showing that the tapes were stolen from PFC Fuentes.

The law enforcement exclusion in Rule 803(8)(B) is based in large part on the presumption of unreliability of observations made by law enforcement officials investigating a crime. In enacting the federal rule, Congress was concerned that "observations by police officers at the scene of a crime or the apprehension of the defendant were not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between the police and the defendant in criminal cases." Senate Report No. 1277, 93d Cong.2d Sess., *reprinted in* [1974] U.S. Code Cong. & Ad.News 7051, 7064. Some courts have held that all entries in police reports fall within the ambit of the Rule 803(8)(B) exception. *See United States v. Oates, supra.* Other courts have drawn distinctions between police reports prepared in a routine, objective, non-adversarial setting and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the re-

---

[1]. The drafter's analysis under the rule states that "reports which would be within Federal or Military Rule 803(8) but for the exclusion in (8)(B) are not otherwise admissible under Rule 803(6)." The analysis to Rule 803(6) contains a substantially identical provision.

sults of that investigation. *United States v. Quezada,* 754 F.2d 1190, 1193 (5th Cir. 1985); *see also United States v. Hernandez-Rojas,* 617 F.2d 533 (9th Cir.), *cert. denied,* 449 U.S. 864, 101 S.Ct. 170, 66 L.Ed.2d 81 (1980) (admitting warrant of deportation containing administrative note written by law enforcement officer); *United States v. Union Nacional de Trabajadores,* 576 F.2d 388 (1st Cir.1978) (admitting United States marshal's return stating that an injunction had been served on a union officer); *United States v. Grady,* 544 F.2d 598 (2d Cir.1976) (admitting police report listing serial numbers of weapons confiscated). We consider the reasoning embodied in this latter line of cases to be more persuasive.

■ Rule 803(8)(A) is designed basically as a tool to allow into evidence public records and documents not prepared for the purposes of litigation. *United States v. Stone,* 604 F.2d 922 (5th Cir.1979). Subsection (B) of the rule recognizes the fact that the adversarial nature of investigative police reports is likely to cloud the perception of the reporting individual and thus excludes police reports as inherently untrustworthy. *United States v. Orozco,* 590 F.2d 789, 793 (9th Cir.1979). *See also* J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 803(8)[04], at 803-262 (1985). In the case of documents which record routine, non-adversarial observations made as a part of the daily function of the particular agency, these "clouding factors" are not present, and the observations are deemed reliable. It logically follows that such ministerial entries embodied in police reports should also be admissible. The admissibility of a public document or parts thereof depends primarily on the reliability of the record or entry and is not *per se* inadmissible simply because the person making the entry is a law enforcement official. This reasoning is not only in accord with the current trend of federal case law, but also with the intent of Congress in enacting the law enforcement exclusion. *See Quezada, supra, Hernandez-Rojas, supra, Orozco, supra, Grady, supra. See also United States v. Burge,* 50 C.M.R. 200 (N.C.M.R.1975) (where a panel of this Court held that entries on a police blotter were admissible to prove the identity of the person arrested). We therefore conclude that ministerial, non-adversarial information documented by law enforcement officials is admissible under Mil.R.Evid. 803(8) notwithstanding the prohibition of evaluative reports under Rule 803(8)(B).

■ Turning to the case at bar, the investigator's report at issue contained basically two types of information. One type concerned the reporting of a larceny, including the time and date of the report, the officer receiving the call, the name of the caller, and the name of the victim. The second type consisted of the investigator's findings as to the facts and circumstances surrounding the reported larceny, including the fact that appellant was considered as a suspect. At trial, the military judge admitted the report into evidence for the limited purpose of showing that a larceny from PFC Fuentes occurred and that the appellant was identified as a suspect. We find that the report was properly admitted to show that a larceny of PFC Fuentes' possessions had occurred, but that the military judge erred by allowing the record to show that appellant was identified as a suspect. The entries in the report that a larceny from Fuentes occurred represent information mechanically registered by the desk sergeant at the PMO as a result of a telephone complaint, and were recorded in the routine process of starting an investigation. This information is not evaluative or otherwise subjective in nature and thus does not fall within the exclusion in Rule 803(8)(B). *See Quezada, supra.*

The fact that appellant was identified as a suspect in the case, however, resulted from information garnered during the course of the investigation and clearly constitutes a subjective determination made by the investigator based on his evaluation of the evidence obtained. As such, that information should have been excluded under Rule 803(8)(B).

■ This error, however, does not mandate reversal of appellant's conviction because we find that there is sufficient independent evidence contained in the record of trial to corroborate the essential facts admitted by the appellant in his confession to justify an inference of their truth. *See* Mil.R.Evid. 304(g); *see also Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). In his confession, the appellant admitted to the following essential facts: first, that he missed morning formation and that during the course of the morning he discovered a brown cassette case amongst a set of personal gear staged outside a building; second, he picked up the cassette case, took eight cassettes out and put the rest of the tapes in a plastic bag and threw them into a dumpster; third, he disposed of the case and its remaining contents in a locker between barracks 1643 & 1644 at Twentynine Palms, California. At trial, evidence was adduced that showed the following: first, that appellant missed morning muster; second, that upon being asked where the cassette case was, appellant led his platoon leader to a locker between barracks 1643 & 1644, where a brown cassette case was found; third, that appellant's fingerprint was on the cassette case; fourth, that a number of cassette tapes were found in appellant's barracks locker, confiscated by the platoon leader and given to PFC Fuentes. We find this evidence sufficient to justify an inference of truth in the appellant's confession. *See* Mil.R.Evid. 304(g).

Accordingly, the findings and sentence as approved on review below are affirmed.

Judge MIELCZARSKI and Judge DE-CARLO concur.