UNITED STATES, Appellee,

v.

John K. YEOMAN, Private, U.S. Marine Corps, Appellant.

No. 55,436.

NMCM 85 3746.

U.S. Court of Military Appeals.

Sept. 21, 1987.

For Appellant: *Lieutenant Debra F. Gambrill, JAGC, USNR* (argued); *Lieutenant Commander Alvin L. McDonald, JAGC, USN* (on brief); *Commander Frederick N. Ottie, JAGC, USN.*

For Appellee: *Lieutenant T.J. Romine, JAGC, USNR* (argued); *Captain Wendell A. Kjos, JAGC, USN* and *Lieutenant Aaron Santa Anna, JAGC, USNR* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On July 10–11, 1985, appellant was tried by military judge sitting alone at Marine Corps Air Ground Combat Center, Twenty-nine Palms, California. Contrary to his pleas, he was found guilty of one unauthorized absence from his appointed place of duty and larceny, in violation of Articles 86 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 921, respectively. Appellant was sentenced to a bad-conduct discharge, 3 months' confinement, and forfeiture of $375.00 pay per month for 3 months. The convening authority approved the sentence as adjudged. The Court of Military Review affirmed the findings and sentence. 22 M.J. 762 (1986).

▮ This Court granted review of the following specified issue:

WHETHER THE U.S. NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED WHEN IT HELD THAT A MILITARY POLICE INVESTIGATOR'S REPORT WAS ADMISSIBLE UNDER MIL.R.EVID. 803(8) AS A

BUSINESS RECORD FOR THE LIMITED PURPOSE OF ESTABLISHING THAT A CRIME HAD BEEN REPORTED TO THE INVESTIGATOR.

We hold that any error* which may have occurred in the admission of this document was unquestionably harmless under the circumstances of the present case. Mil.R. Evid. 103, Manual for Courts-Martial, United States, 1984. Also, we hold that appellant's confession to this larceny offense was sufficiently corroborated by properly admitted evidence in this case. Mil.R.Evid. 304(g).

On June 4, 1985, appellant confessed to the theft of a cassette tape case from some baggage stored near Building T–4 around noon on March 28, 1985. This confession was admitted at trial against him. It states:

At this time, I, Pvt John K. YEOMAN, 252–21–4549 desire to make the following voluntary statement. This statement is made with an understanding of my rights as set forth above. It is made with no threats or promises having been extended to me. For identification purposes I am a 20 year old caucasian male Marine, attached to B Co, MCCES, MCAGCC, 29 Palms, CA. On 29MAR85 [sic], I went to the PX at about 0700, because I had managed to not make the morning formation, and therefore I had not been assigned to any work details that morning. While at the PX I simply sat around and then returned to Bldg T–4 at about 1200. When I arrived at Bldg T–4 no one was there because they had all gone to lunch. There was also no guard on the gear that had been staged near the trailer. There were about three people's gear staged there but there was only the one set of baggage that had anything that looked good to take. That was a set of baggage that also had a cassette tape case with it. At that time I did not look into the case, I simply picked up the case and went to the area between barracks 1643 and 1644. Once between the barracks I opened the cassette tape case I saw 24 miscellaneous tapes, three or four personal letters, and an airline ticket. At that time I took eight cassette tapes which were mostly rock music, and put the other sixteen tapes which were mostly new wave music, in a plastic bag and left them in a Dempsty Dumpster near the barracks. The letters, I had left in the cassette case with the airline ticket. I did not take the cassette case because I already had one and did not need a second one. When I left I left the cassette case open and I assume that that is why the letters and the ticket were not there later on. At the afternoon formation the only thing that was specifically asked for was the cassette case so that is all that I acknowledged to when I had to. I still thought that the letters and the airline ticket would be in the case, but evidently when the case was found, the letters and the ticket had been blown away by the wind. The following questions were asked by J.W. MORIN, whom I know to be a Criminal Investigator, with the United States Marine Corps, and were answered by myself.

Q. Why did you steal the cassette case?
A. I only had a few tapes of my own and was tired of listening to the same music over, and over again.
Q. Who put the letters in the discrepancy box?
A. I have no idea.
Q. Do you know what happened to the airline ticket?
A. No.
Q. Why didn't you tell all of the truth before this?
A. I thought that I could get away with it.
Q. Was your statement dated 29MAR85, true or false?
A. It was false.
Q. Did you know the statement dated 29MAR85, to be false when you signed it?
A. Yes.

* We expressly withhold judgment on the evidentiary question addressed by the court below.

This 2 page statement was typed for me by J.W. MORIN, as we discussed its contents. I have read this statement and have initialled all errors that I have found. This statement is true and correct so help me God.

[signed] John K. Yeoman
1550 / 850604

Trial counsel also introduced a police "Incident/Complaint Worksheet" dated March 29, 1985. This document was a report of a larceny of private property and listed the complainant as Gunnery Sergeant Forward, the victim as PFC Fuentes, and the suspect as appellant. In this report, its maker, later identified as Corporal Cogdill, stated:

At 0913, 850329, Forward contacted Begeske (D/Sgt) and reported a larceny of private property at Bldg #1620, MCAGCC. Cogdill (MP) responded and met with Fuentes who related that between 1300, 850328, and 1600, 850328, person(s) unknown had taken his brown in color cassette tape case containing 24 various cassette tapes, and an American Airlines round trip ticket from Los Angeles, CA. to Austin, TX., valued at $197.00, which was left unsecured on the MCCES grinder adj. Bldg. #1640 MCAGCC. Forward related that at approx. 1650, 850328, Little informed him that Yeoman had found a tape case and various cassette tapes. Upon Forward's confronting Yeoman, Yeoman relinquished a brown in color cassette tape case and 8 various cassette tapes to Forward. Yeoman was transported to PMO Bldg. #1043 MCAGCC where he was further processed by CID SSgt Morin who assumed the case. Yeoman was released to unit representative at 1312 850329.

Defense counsel objected to the admission of this report on hearsay grounds. Nevertheless, the military judge admitted this report, albeit, for a limited purpose. He said:

MJ: Thank you, counsel. Prosecution Exhibit 15 for identification will not be admitted into evidence for any purpose. Prosecution Exhibit 10 [the Incident/Complaint Worksheet] will be admitted for the limited purpose as follows. That a larceny of private property from PFC Fuentes of Bravo Company, MCCES, Marine Corps Air Ground Combat Center, was reported to PMO on 29 March 1985, and that PFC John K. Yeoman was identified as a suspect, period. The military judge feels that this is consistent with [the] *Burge* case at 50 C.M.R. 200, Navy Court of Military Review, 1974, as affirmed and discussed further on appeal at 1 MJ 408, Court of Military Appeals, 1976. Do either counsel have any question concerning my ruling?

TC: No, Your Honor.

DC: Yes, Your Honor. You have stated that it is admitted for the limited purpose of proving that a larceny of personal property of PFC Fuentes was reported to PMO, is that correct, Your Honor?

MJ: That is correct.

DC: Are you making a finding as to what the personal property reported to be stolen was?

MJ: No.

DC: Thank you, Your Honor.

MJ: Accordingly then, with that limitation, Prosecution Exhibit 10 for identification is admitted, and the words "for identification" will be deleted. Does the government have anything further?

The military judge ruled that the worksheet was admissible to show that a report of a larceny of private property from PFC Fuentes was made to the Provost Marshal's Office on March 29, 1985, and appellant was identified as a suspect. This document does indicate that its maker stated that Desk Sergeant Begeske said that Gunnery Sergeant Forward made such a report. Moreover, this document does indicate that the maker of the report con-

**4**

sidered appellant a suspect. Clearly, hearsay within hearsay is involved in admission of this evidence to show the making of the larceny complaint. Mil.R.Evid. 805; *McCormick on Evidence* § 324.3 (E. Cleary, 3d ed., 1984). Simple hearsay is involved in its use for the second purpose. Mil.R.Evid. 801(c). We note, however, that other evidence in this case makes it unnecessary to resolve the difficult evidentiary questions raised by admission of this document for these purposes. *See* Mil.R.Evid. 103; Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

Prior to admission of this document, SSgt Morin, a criminal investigator at the Provost Marshal's Office, testified that on March 29, 1985, he investigated "a reported theft ... of a cassette carrying case, some cassettes, three personal letters and an airline ticket." He also stated he suspected appellant of this theft and that the victim was PFC Fuentes. In addition, Corporal Cogdill, a patrolman for the PMO, testified that PFC Fuentes reported to him on March 29, 1985, that a larceny occurred on March 28, 1985, and made a sworn statement concerning the theft. This non-hearsay evidence clearly established the evidentiary purposes for which the challenged evidence was admitted by the judge. Accordingly, any error in admission of the challenged evidence for these purposes was harmless beyond any doubt.

We now turn to a more important question presented by this case—namely, whether appellant's confession was adequately corroborated as required by Mil.R. Evid. 304(g). Appellant asserts that the worksheet was not admissible to corroborate the confession, so his confession was not sufficiently corroborated under Mil.R. Evid. 304(g). Even without reliance on the challenged exhibit, we disagree.

■ The rule of evidence which requires corroboration has a purpose. That "purpose is to prevent 'errors in convictions based upon untrue confessions alone'" or suspect convictions based upon words which might "reflect the strain and confusion" caused by "the pressure of a police investigation." *Smith v. United States,*

348 U.S. 147, 153, 75 S.Ct. 194, 197, 99 L.Ed. 192 (1954). In the case before us, the record does not show any allegations of oppressive police interrogation techniques. Appellant's confession simply was not obtained in violation of the Fifth Amendment or through "coercion, unlawful influence, or unlawful inducement" and therefore, it was a voluntary confession. Mil.R.Evid. 304(c)(3). Accordingly, such a confession was admissible. Yet, it still must be corroborated by independent evidence. However, such "evidence [of corroboration] need raise only an inference of the truth of the essential facts admitted." Mil.R.Evid. 304(g)(1). Moreover, "the quantum of evidence" needed to raise such an inference is "slight." S. Saltzburg, L. Schinasi & D. Schlueter, *Military Rules of Evidence Manual* 139 (2d ed. 1986); *see Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954); *e.g., United States v. Garth,* 773 F.2d 1469, 1479 (5th Cir.1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 693 (1986); *United States v. Pennell,* 737 F.2d 521, 537 (6th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985); *United States v. Moore,* 735 F.2d 289, 293 (8th Cir.1984); *United States v. O'Connell,* 703 F.2d 645, 648 (1st Cir.1983); *United States v. Fasolino,* 586 F.2d 939, 940 (2d Cir.1978). As correctly noted by the court below, the Government has more than met this burden in the present case.

The Court of Military Review observed:

In his confession, the appellant admitted to the following essential facts: first, that he missed morning formation and that during the course of the morning he discovered a brown cassette case amongst a set of personal gear staged outside a building; second, he picked up the cassette case, took eight cassettes out and put the rest of the tapes in a plastic bag and threw them into a dumpster; third, he disposed of the case and its remaining contents in a locker between barracks 1643 and 1644 at Twentynine Palms, California. At trial, evidence was adduced that showed the following:

first, that appellant missed morning muster; second, that upon being asked where the cassette case was, appellant led his platoon leader to a locker between barracks 1643 & 1644, where a brown cassette case was found; third, that appellant's fingerprint was on the cassette case; fourth, that a number of cassette tapes were found in appellant's barracks locker, confiscated by the platoon leader and given to PFC Fuentes. We find this evidence sufficient to justify an inference of truth in the appellant's confession. *See* Mil.R.Evid. 304(g).

22 M.J. at 766

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge COX concurs.

EVERETT, Chief Judge (concurring in the result):

The majority opinion describes various items of evidence—other than the "Incident/Complaint Worksheet"—which corroborated appellant's confession. Subsequently, this evidence is referred to as "non-hearsay." 25 M.J. at 4. Some of this evidence—such as Corporal Cogdill's testimony about what PFC Fuentes had "reported" to him and SSgt Morin's testimony about "a reported theft"—was hearsay to the extent it was used to show the contents of the report. Of course, the fact of the making of the report—as distinguished from its contents—would have little value, either to corroborate a confession or otherwise to prove guilt.

I note, however, that no defense objection was made as to these "reports"; and there was no request that this evidence be considered only for a limited purpose. Under the Military Rules of Evidence, hearsay evidence is competent unless objected to. *See* Mil.R.Evid. 103(a)(1). Therefore, the contents of the reports—along with other evidence—could be considered in corroborating Yeoman's confession. With such corroboration, the confession was admissible; and a basis existed for concluding that Yeoman was guilty beyond a reasonable doubt.

The Court of Military Review was of the view "that the [challenged] report was properly admitted to show that a larceny of PFC Fuetes' possessions had occurred, but that the military judge erred by allowing the record to show that appellant was identified as a suspect." 22 M.J. 762, 765. I believe that such use of a police report violates the exclusion in Mil.R.Evid. 803(8)(B), and that a report to the police is admissible *only* to show that a report was made—if that fact is itself relevant in some way.