# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CELTNIEKS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JUSTIN P. SWIFT**
**United States Army, Appellant**

ARMY 20100196

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge (trial)
Timothy P. Hayes Jr., Military Judge (rehearing)
Colonel Michael J. Benjamin, Staff Judge Advocate (trial)
Colonel Karen H. Carlisle, Staff Judge Advocate (rehearing)

For Appellant: Colonel Kevin Boyle, JA; Lieutenant Colonel Jonathan F. Potter, JA; Major Amy E. Nieman, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Captain Katherine L. DePaul, JA; Captain Michael A. Gold, JA (on brief and reply brief following remand).

For Appellee: Colonel Mark H. Sydenham, JA; Captain Jihan Walker, JA (on brief); Lieutenant Colonel A.G. Courie III, JA; Major Michael E. Korte, JA; Captain Samuel E. Landes, JA (on brief following remand).

29 August 2017

---------------------------------------------------------
MEMORANDUM OPINION ON REMAND
---------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

TOZZI, Senior Judge:

On 10 March 2010, a panel consisting of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of indecent acts with a child in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2000) [hereinafter UCMJ]. The panel sentenced appellant to a dishonorable discharge, fourteen years confinement, total forfeitures, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

On 29 November 2012, this court set aside the findings and sentence and dismissed the specifications without prejudice because the government failed to allege the terminal element for both Article 134, UCMJ, offenses. A new trial was authorized by this court.

On 22 October 2014, a military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of indecent acts with a child in violation of Article 134, UCMJ. The military judge sentenced appellant to a dishonorable discharge, eleven years confinement, and reduction to the grade of E-1. The military judge credited appellant with 1,142 days confinement credit. The convening authority approved the adjudged sentence and the confinement credit.

This court affirmed the findings and sentence in a memorandum opinion. *United States v. Swift*, ARMY 20100196, 2016 CCA LEXIS 26, at *10 (Army Ct. Crim. App. 21 Jan. 2016) (mem. op.) (*Swift I*). On 26 April 2017, our superior court remanded the case to us for another review under Article 66(c), UCMJ, and to determine whether the military judge erred in admitting uncharged misconduct under Military Rule of Evidence [hereinafter Mil. R. Evid.] 404(b) and Mil. R. Evid. 414. *United States v. Swift*, 76 M.J. 210, 212-18 (C.A.A.F. 2017).

In his second appeal at this court, we considered all the errors assigned and personally raised by appellant, two of which warrant discussion but no relief. *See United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). The issues warranting discussion are as follows: (1) the admissibility of Mil. R. Evid. 404(b) and Mil. R. Evid. 414 evidence, and (2) the effectiveness of defense counsel's assistance. Regarding the admissibility of victim "outcry" evidence, we adopt the reasoning in *Swift I*. 2016 CCA LEXIS 26, at *5-10.

## BACKGROUND

Appellant was convicted of sexually assaulting his natural daughter KS on two occasions. One sexual assault resulting in conviction occurred between 1 November 2003 and 31 December 2003 at Schofield Barracks, Hawaii. In a sworn statement to Criminal Investigation Command (CID) special agents, dated 7 September 2007, appellant confessed to touching KS in Hawaii in November or December of 2003. Appellant stated he arrived home from a long day at work to his wife and two children already in bed. He then entered his room in the dark and crawled into his bed. Appellant explained:

> I crawled in beside her and reached to touch her. I had a
> hard day and needed to feel her close. I wanted to be as
> close to her as I could and had a strong desire to make
> love to the woman I love more than anyone else in this
> world. I felt flesh and reached under her undergarments
> but something didn't feel right. I thought it was my

> imagination and continued.  Then I heard my wife say that
> [KS] was in bed with her.  I pulled my hand away
> instantly and went for the light.  [KS] had a confused look
> on her face like she knew that something was happening
> but she didn't know what.  I told her that I did not mean to
> touch her.  I didn't even know she was in the bed.  I asked
> her to forget about it, that daddy made a mistake but that
> he would never make that mistake again.  She went back
> to sleep and I didn't hear about it again for 4 yrs."

Appellant further stated: "I think she [KS] was 4 years old, and this happened around Nov or Dec of 2003, when we were stationed at Schofield Barracks, Hawaii." When asked what he noticed was different when fondling his daughter's genitals, appellant stated: "Smooth skin, and no hair.  Position, when my wife lays down she has a certain body size and my daughter has a certain body size."  When asked how long he was fondling his daughter's genitals, appellant stated: "10 to 15 seconds. Then my wife said [KS] was in the bed.  That is when I stopped."  Appellant stated he did not insert his fingers into KS's vagina, but was "just rubbing it."

The other incident for which appellant was convicted occurred between 1 May 2007 and 5 September 2007 at Fort Bliss, Texas.  Appellant stated in the same sworn statement to CID agents cited above that he experienced blackouts and there were times that he fell asleep in one room and woke up in another.  Appellant explained:

> There was an incident that happened back in May.  One
> night I was laying next to [KS] in her bed reading her a
> Harry Potter book.  The next thing I consciously remember
> was being woke up by my wife on the couch with no
> recollection on how I got there.  My wife asked me if it
> was possible that I could have maybe touched her by
> accident but I wouldn't listen to her. . . .  During that
> blackout spell I had a dream about an old flame.  She and I
> had never touched intimately in real life but I had wanted
> to.  I lived out part of that fantasy in my dream. . . .  We
> always enjoyed time out as friends but she would not let it
> go further than that.  In my dream we almost did get that
> far.  I laid my head on her chest and she smiled.  In my
> dream this made me bolder.  I reached down to touch on
> her vagina.  She said to stop, this wasn't right.  I have a
> wife and it would be wrong for us to engage in intercourse
> so I stopped.  As this was happening in my dream, I was
> performing it in real life with my daughter who in my
> dream was [my old flame].  I never have and never will
> have any desire to touch my daughter or any other child in
> a sexual manner.

When asked when this incident occurred, appellant stated "[h]ere on Fort Bliss, in our current house, and that was around 6 Jun 07." When asked if he inserted his finger into [KS's] vagina on this occasion, appellant stated, "I don't know."

Our superior court held that the military judge did not err in admitting appellant's confession in this case, and appellant waived the issue of corroboration at trial. *Swift*, 76 M.J. at 217-18.

There were other incidents of uncharged misconduct introduced into evidence during appellant's trial. The government's summary of the three instances of uncharged misconduct it intended to introduce pursuant to Mil. R. Evid. 404(b) and Mil. R. Evid. 414 is listed below.

The Couch Peeing Incident:

> [KS's] therapist, [CR], (now [CL]) called Child Protective Services to report an incident in which [KS] straddled the Accused while he was laying on the sofa. The Accused had his penis exposed. According to [KS], the Accused "peed" on the couch on her night gown. [KS] then cleaned up the mess and stated, "Here we go again!" The Accused then made the statement, "I hope no one gets the wrong idea about this," or words to that effect.

The Hawaii Van Incident:

> During a forensic interview on 29 June 2006, [KS] revealed that the Accused touched her vulva in the back seat of a van when she was four.

The Texas Pool Incident:

> [KS] remembers an incident where the Accused touched her vagina while she was changing in her bedroom. According to [KS], she had been mean to her sister by pushing her into a pool and was put in time-out in her room. When her time-out was over, the Accused told her to change out of her bathing suit. While she was changing, the Accused told her to stop and sat her on the bed. The Accused then fondled her vulva and rubbed his finger between her labia.

At trial, KS testified appellant touched her inappropriately on "two or three" occasions, including the "Hawaii Van Incident," the "Texas Pool Incident," and another incident that occurred in Texas when she was seven, involving appellant fondling her genitals as she was in bed with her mother after having a nightmare (the

"Texas Bedside Incident"). This incident is distinct from the similar misconduct charged in Specification 1 of The Charge, which occurred in Hawaii in 2003. KS also testified about the "Couch Peeing Incident" in relation to a counseling session she had with Ms. CL. Ms. CL testified and filled in details of this incident. None of this misconduct was charged by the government.

Eventually, when KS was eight years old, she made a disclosure to her third-grade teacher, Ms. VA, indicating that her father touched her inappropriately. At the time of appellant's rehearing, KS was fifteen years old and could no longer recall the name of her third-grade teacher or making the disclosure. Ms. VA testified that KS disclosed she was sexually assaulted by appellant. Ms. VA also testified she notified the school counselor and filed a report with Child Protective Services.

## LAW AND DISCUSSION

### A. Admissibility of Mil. R. Evid. 404(b) and Mil. R. Evid. 414 Evidence

The military judge admitted the evidence of uncharged misconduct, consisting of the "Couch Peeing Incident," the "Hawaii Van Incident," and the "Texas Pool Incident," all described above. Normally, we review a military judge's decision to admit or exclude evidence for an abuse of discretion. *United States v. Barnett*, 63 M.J. 388, 394 (C.A.A.F. 2006). In this case, as directed by our superior court, we must conduct a de novo review of the admissibility of the uncharged misconduct since the military judge did not make findings of fact and conclusions of law regarding the admission of this evidence. *See Swift I*, 76 M.J. at 218 (citing *United States v. Berry*, 61 M.J. 91, 96 (C.A.A.F. 2005)).

### 1. Mil. R. Evid. 404(b) and the Reynolds Test

As a general rule, "[e]vidence of other crimes, wrongs, or acts is *not admissible to prove the character of a person* in order to show action in conformity therewith." Mil. R. Evid. 404(b) (emphasis added). However, the rule goes on to provide that prior acts of an accused may "be admissible for *other purposes*, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." Mil. R. Evid. 404(b) (emphasis added). This rule embodies the traditional limitations on the admissibility of character evidence—through prior acts or otherwise—to prove an accused possessed a propensity to commit the bad act for which he or she is now charged. It allows this evidence to be considered for *non-character* purposes, and only if the government can demonstrate its admissibility under *United States v. Reynolds*, 29 M.J. 105 (C.M.A. 1989), and its progeny.

In *Reynolds* the Court of Military Appeals adopted the following test for determining whether prior uncharged misconduct of an accused is admissible under Mil. R. Evid. 404(b):

> (1) Whether the evidence reasonably supports a finding by
> the court members that appellant committed the prior
> crimes, wrongs, or acts;
>
> (2) Whether the evidence makes a "fact of consequence"
> more or less probable; and
>
> (3) Whether the probative value of the evidence is
> substantially outweighed by the danger of unfair prejudice
> under Mil. R. Evid. 403.

*United States v. Morrison*, 52 M.J. 117, 121-22 (C.A.A.F. 1999) (citing *Reynolds*, 29 M.J. at 109). Our superior court explained that "[p]roof of the first prong is satisfied if the conduct is proven by a preponderance of the evidence." *Id.* at 122. In analyzing the second prong, a "fact of consequence" that is made more or less probable must be one or more of the non-propensity bases provided for in Mil. R. Evid. 404(b). *Id.* The third prong involves a conventional balancing test under Mil. R. Evid. 403. *Id.* at 123. "The evidence at issue must fulfill all three prongs to be admissible." *Barnett*, 63 M.J. at 394.

Here, the evidence supports a finding that appellant committed the prior acts by a preponderance of the evidence. *See Huddleston v. United States*, 485 U.S. 681, 690 (1988) (determining whether the trier of fact could find by the preponderance of the evidence the conditional facts—the other criminal offenses—actually occurred). The testimony of KS alone is sufficient to support a finding that appellant committed the instances of uncharged misconduct by a preponderance of the evidence. In addition, the testimony of KS's counselor regarding the "Couch Peeing Incident" bolsters the conclusion that particular incident occurred.

There is also no doubt that the uncharged misconduct in this case does make a fact of consequence—whether appellant sexually assaulted his biological daughter— more probable. Finally, the probative value of this evidence is not outweighed by the danger of unfair prejudice. Appellant's assertion that a large portion of the trial transcript deals with the uncharged misconduct is accurate but not dispositive. The purpose of Mil. R. Evid. 404(b) is to allow admissibility for certain purposes. Here, the uncharged misconduct was relevant to appellant's opportunity, intent, and to the absence of mistake or accident in the charged misconduct. Particularly with regard to absence of mistake or accident, the uncharged misconduct is relevant to determining the veracity of appellant's assertions that he thought he was touching his wife and an "old flame" during the course of the charged misconduct. These are legitimate and relevant purposes for admission of the uncharged misconduct.

*2. Mil. R. Evid. 414 and the* Yammine *Test*

The incidents of uncharged misconduct are also admissible under Mil. R. Evid. 414, which "permits the admission of evidence of a prior act of 'child molestation' to show propensity to commit a charged act of 'child molestation.'" *United States v. Yammine*, 69 M.J. 70, 73 (C.A.A.F. 2010) (quoting Mil. R. Evid. 414). *See* Mil. R. Evid. 414 ("In a court-martial in which the accused is charged with an offense of child molestation, evidence of the accused's commission of one or more offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant."). Mil. R. Evid. 414 was "intended to provide for more liberal admissibility of character evidence in criminal cases of child molestation where the accused has committed a prior act of sexual assault or child molestation." Mil. R. Evid. 414 analysis at A22-38.

Admission of evidence under Mil. R. Evid. 414 requires a two-step analysis. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). First, the military judge must make three threshold findings:

> (1) whether the accused is charged with an act of child molestation as defined by [Mil. R. Evid.] 414(a); (2) whether the proffered evidence is evidence of his commission of another offense of child molestation as defined by the rule; and (3) whether the evidence is relevant under [Mil. R. Evid.] 401 and [Mil. R. Evid.] 402.

*Yammine*, 69 M.J. at 73-74 (quoting *Ediger*, 68 M.J. at 248).

Second, once all three of the threshold factors are met, the military judge must then apply a balancing test under Mil. R. Evid. 403. *Ediger*, 68 M.J. at 248. "'The importance of careful balancing arises from the potential for undue prejudice that is inevitably present when dealing with propensity evidence.'" *Id.* (quoting *United States v. James*, 63 M.J. 217, 222 (C.A.A.F. 2006)). "Inherent in [Mil. R. Evid.] 414 is a 'general presumption in favor of admission.'" *Id.* (quoting *Berry*, 61 M.J. at 95).

In this case, the essential requirements of Mil. R. Evid. 414 and its controlling case law are met. Appellant was charged with two specifications of child molestation. The uncharged misconduct in this case is also evidence of the commission of other acts of child molestation. Appellant characterizes the "Couch Peeing Incident" as an act not constituting child molestation, but the testimony of KS, when considered through the lens of a child, could reasonably be interpreted as the act of appellant masturbating while KS straddled him, thereby constituting an offense of child molestation by a preponderance of the evidence. Furthermore, the uncharged misconduct is relevant to the charged offenses as described above.

In addition, the uncharged misconduct also passes the Mil. R. Evid. 403 balancing test. *Berry*, 61 M.J at 95. The probative value of the uncharged

7

misconduct was high under the circumstances of appellant's claim of mistake regarding the charged misconduct, and was not substantially outweighed by the danger of unfair prejudice. The proof of the prior acts was strong, considering the testimony of KS and her counselor. While the cross-examination of government witnesses did show potential bias of KS and the possibility of a motive to fabricate to remove herself from child neglect and an unclean home, the probative weight of the evidence remained high. There was little potential for less prejudicial evidence relevant to the charged offenses. While there was considerable time spent during trial proving the uncharged misconduct, in the context of the entire case the time spent was not disproportionate or unduly confusing to the panel. Moreover, each of the instances of charged misconduct occurred close in time to one of the instances of uncharged misconduct. In light of the above, the evidence of uncharged misconduct in this case was admissible under Mil. R. Evid. 414.

### B. Ineffective Assistance of Counsel

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel. *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (citing *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001)). To establish his counsel was ineffective, appellant must satisfy the two-part test, "(1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Although appellate courts review both prongs of the *Strickland* analysis de novo, judicial scrutiny of counsel's performance is highly deferential. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("Even under de novo review, the standard for judging counsel's representation is a most deferential one.").

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .

*Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted).

The *Strickland* framework was adopted by the military justice system and further developed into the following three-pronged test to determine whether an appellant has overcome the presumption of competence and shown prejudice:

> (1) Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions?";
>
> (2) If the allegations are true, did defense counsel's level of advocacy fall "measurably below the performance . . . [ordinarily expected] of fallible lawyers?"; and
>
> (3) If defense counsel was ineffective, is there a "reasonable probability that, absent the errors," there would have been a different result?

*United States v. Grigoruk*, 56 M.J. 304, 307 (C.A.A.F. 2002) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

In adopting the *Strickland* framework, our superior court has maintained the strong deference to counsel's reasonable decisions and rejected the advantages of hindsight. *See United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) ("Thus, our scrutiny of a trial defense counsel's performance is 'highly deferential,' and we make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate conduct from counsel's perspective at the time.'"). In so doing, our superior court has recognized the appropriate deference to the normal conduct of counsel that may at times be mistaken, incorrect, confused, or less than ideal—essentially *fallible*. What it has not done is to defer to advocacy that falls so measurably below expectations for fallible attorneys that the conduct was *unreasonable* under the circumstances. This distinction captures the basis for this constitutional protection. "[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial." *Strickland*, 466 U.S. at 689. Accordingly, our superior court has echoed the need for deference by explaining: "'[appellate courts] address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Akbar*, 74 M.J. at 380 (citations omitted).

Moreover, there is no need for us to address both components of the *Strickland* inquiry if an appellant makes an insufficient showing on either one. *Strickland*, 466 U.S. at 697.

> In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the

> alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* Essentially, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. "Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692.

### 1. Defense counsel did not object to a lack of corroboration.

Defense counsel were not ineffective in their judgment that appellant's admissions had been sufficiently corroborated because, even if in error, their assessment was not unreasonable. A brief examination of the requirement for independent corroboration of an accused's confession or admission supports the reasonableness of defense counsel's professional judgement.

The essential facts of a confession or admission must be independently corroborated before being admitted into evidence. *United States v. Adams*, 74 M.J. 137, 140 (C.A.A.F. 2015); Mil. R. Evid. 304(c). The corroboration requirement "'does not necessitate independent evidence of all the elements of an offense or even the *corpus delicti* of the confessed offense. Rather, the corroborating evidence must raise only an inference of truth as to the essential facts admitted.'" *Id.* (quoting *United States v. Cottrill*, 45 M.J. 485, 489 (C.A.A.F. 1997)). "[N]o mathematical formula exists to measure sufficient corroboration." *United States v. Melvin,* 26 M.J. 145, 146 (C.M.A. 1988). However, the "inference [of truthfulness] may be drawn from a quantum of corroborating evidence that [our superior court] has described as 'very slight.'" *United States v. Arnold,* 61 M.J. 254, 257 (C.A.A.F. 2005) (quoting *Melvin*, 26 M.J. at 146). The reason for this modest level of corroboration is rooted in the practical purpose for the rule, which is to establish the reliability of the confession so as to prevent convictions based on false confessions. *See United States v. Yeoman,* 25 M.J. 1, 4 (C.M.A. 1987).

Moreover, "[w]hat constitutes an essential fact of an admission or confession necessarily varies by case." *Adams*, 74 M.J. at 140. The type of essential facts that our superior court has "previously considered include the time, place, persons involved, access, opportunity, method, and motive of the crime." *Id.* (citations omitted). For example, in *Cottrill*, the "appellant admitted to touching his daughter's vaginal area in the process of bathing and powdering her." 45 M.J.

at 487.  In a second statement the next day, the appellant confessed to digitally penetrating "his daughter's vagina for 10-15 seconds on several occasions . . . ." *Id.* at 487, 489.  The corroborating evidence included his daughter's statement to a physician that "her 'privates' hurt" and "'[her] Daddy touches [her] privates,'" which caused her pain.  *Id.* at 489.  The physician also testified that "there appeared to be an unnatural opening in [the victim's] hymen" that "was caused by sexual abuse."  *Id.*  Even though this corroborating evidence did not address the time, place, access, opportunity, method, or motive for the offense, our superior court held the corroborating evidence was sufficient.  *Id.* at 489-90.

Similarly, in *United States v. Rounds*, an appellant admitted to marijuana and cocaine use.  30 M.J. 76, 78-79 (C.M.A. 1990).  Our superior court held there was sufficient corroboration for some of the admitted drug use even though no witness observed the appellant actually using drugs.  *Id.* at 77-79.  Although the government witnesses "did not personally see appellant use marijuana or cocaine" nor could they prove "he consumed, ingested, or otherwise used drugs as he confessed[,]" the court found the corroborating testimony "did establish appellant's presence at the scene of active drug use and his direct access to the drugs being used by others . . . ."  *Id.* at 80.  The court also found their testimony "dovetail[ed] with the time, place, and persons involved in the criminal acts admitted by appellant in his confession."  *Id.*  Essentially, their testimony proved the "appellant had both access and the opportunity to ingest the very drugs he admitted using in his confession."  *Id.*

In light of these examples, even if incorrect, defense counsel were not unreasonable to conclude the quantum of evidence had been met to corroborate the essential facts in appellant's admission.  Here, appellant admitted to committing two sexual offenses against his daughter.  First, appellant admitted when KS "was 4 years old . . . around Nov or Dec of 2003," when "stationed at Schofield Barracks, Hawaii[,]" he "felt flesh and reached under her undergarments" and felt "[s]mooth skin, and no hair" and although "something didn't feel right" he "continued" to rub her genitals for "10 to 15 seconds."  Second, "around 6 Jun 07" at "Fort Bliss," in his house, he again touched KS's genitals.  These essential facts were directly or circumstantially corroborated by the government's witnesses, which testified to the time, place, perpetrator's identity, access, and opportunity.

Beyond these essential incriminating facts, the remainder of appellant's statement was self-serving and formed the basis for the mistake-of-fact defense his counsel asserted during closing argument.  This is not a case where the corroboration of a few essential facts is used to admit a confession filled with incriminating statements under a flawed view of a "tipping point" in corroboration.  As our superior court has made clear, "[t]here is no 'tipping point' of corroboration which would allow admission of the entire confession if a certain percentage of essential facts are found corroborated . . . ." *Adams*, 74 M.J at 140.  Instead, appellant's statement contained few incriminating facts, with the vast majority articulating a mental responsibility or mistake-of-fact defense.  As a result, defense

counsel specifically argued as one of its alternative theories: "So, you know, as you look at his statement, Judge, and it's been admitted and *we didn't contest its admissibility*, . . . [appellant] truthfully told CID and has a *mistake of fact defense* . . . ." (emphasis added). Essentially, defense counsel did not oppose the admission of appellant's statement—waiving any objection to the few incriminating facts they believed were susceptible to corroboration—and utilized the opportunity to argue potential defenses that would otherwise require appellant's testimony to establish.

Therefore, under the facts and circumstances in this case, defense counsel's professional judgement about the corroboration of appellant's admission—even if in error—was not unreasonable. Accordingly, appellant has failed to show his defense counsel were ineffective in this matter.

### 2. *Defense counsel did not request a bill of particulars.*

Defense counsel were not ineffective when they failed to request a bill of particulars to clarify the distinction between the charged and uncharged misconduct because this failure, even if unreasonable, did not prejudice appellant in his judge-alone court-martial. At the beginning of trial, the trial and defense counsel had a R.C.M. 802, UCMJ, conference with the military judge. When the military judge recounted on the record the substance of the conference, defense counsel reminded the military judge about an issue related to a bill of particulars. The military judge responded by stating, "if necessary, the defense may request a bill of particulars from the government as to which misconduct that they are actually charging in the case. And, we will take that up as it comes, but we should be able to resolve that as well." Defense counsel, however, never requested a bill of particulars. Instead, at the conclusion of the trial on the merits, defense counsel made the following closing argument:

> So, now let's talk about the incidents that are before the court. And, it is, granted, a little bit confusing as to drawing that line between what is 404(b) and where the allegations are and, you know, we have obviously got a good handle on it now. And, we are basically left with a couple of different things, Your Honor.

In his summation of the "different things" at issue, defense counsel talked about all the instances of charged and uncharged misconduct. Defense counsel cast the issues as a credibility contest. In so doing, counsel argued the uncharged misconduct was a fabrication and the charged misconduct was covered by the mistake-of-fact defense.

Although appellant is correct that his defense counsel "proceeded to argue the uncharged [misconduct,]" defense counsel did not argue the uncharged misconduct to the exclusion of the charged misconduct, thereby falling prey to the type of confusion a bill of particulars is intended to prevent. Instead, counsel argued

against both the charged *and* uncharged misconduct. Therefore, even if we presume defense counsel were deficient for failing to request a bill of particulars, appellant has not shown prejudice when counsel argued against both the charged and uncharged misconduct. Accordingly, without a sufficient showing of prejudice, appellant has failed to establish his claim of ineffective assistance of counsel.

## CONCLUSION

On consideration of the entire record and the submissions of the parties, the findings of guilty and the sentence are AFFIRMED.

Judge CELTNIEKS and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court